[No. 24484.    Department Two.    August 30, 1933.]

THE STATE OF WASHINGTON, *Respondent*, v. IVER MOE
*et al., Appellants.*[1]

[1]Reported in 24 P. (2d) 638.

304

*Lawrence Seltzer* and *Irvin Goodman,* for appellants.

*John W. Brisky* and *Thos. K. Chambers,* for respondent.

BLAKE, J.—The defendants were convicted of the crimes of grand larceny and riot, charged in a single information filed by the prosecuting attorney of Skagit county. From judgments and sentences entered on the verdicts, they appeal.

Appellants submit twelve assignments of error, which, for purposes of discussion, may be grouped under five heads: (1) Insufficiency of the evidence to sustain a verdict on either charge; (2) error in excluding evidence of economic conditions at and before the time the offenses charged occurred; (3) error in forcing appellants to trial without giving them sufficient opportunity to prepare their defenses; (4) misconduct of the prosecuting attorney in his closing argument to the jury; and (5) denial of motion for new trial interposed on the ground of newly discovered evidence.

In the afternoon of September 3, 1932, a large number of unemployed people, among whom were the appellants, gathered together and marched to the Red Cross commissary in the city of Anacortes. Their purpose was to make a demonstration in support of a demand for a greater allowance of flour than had theretofore been made by the relief committee. Not finding the chairman of the committee at the commissary, they dispatched a messenger for him. On being informed that the chairman could not leave his place of business, they then marched to his office.

All of the appellants were present during these

movements, and they were present in the office of the chairman when the written demand was presented. The appellant Anderson, in fact, presented the demand and seems to have been the principal spokesman for the people at the meeting in the chairman's office. The chairman advised them that it was impossible to comply with the demand, whereupon someone asked if that was final. Being informed that it was, several persons in the crowd said, in substance: "Very well, we'll get it." Up to this point, the assemblage had been peaceable and lawful.

The crowd then left the chairman's office, and a large number of them (variously estimated from forty to seventy-five) proceeded to the Skaggs store, which they entered. Many of them helped themselves to groceries, which they took away without paying for them. The appellants were in the store during all of the time the groceries were being taken. The evidence is conflicting as to the extent and character of their participation in the raid, with the exception of appellant Anderson. There is no evidence that he participated by word or deed in what was done in the store. He took no groceries; he threatened no one by word or gesture; he was merely a passive bystander.

An officer came on the scene while the riot was in progress. He ordered the rioters to disperse. Someone in the crowd said they did not have to; whereupon he repeated the order. The crowd then dispersed without his having called on those present to assist in suppressing the riot.

There are cases which seem to hold that one present at a riot who does not participate in suppressing it is presumptively a rioter. But the rule in those cases rests upon the theory that, after the riot act is read by a magistrate and the rioters are ordered to disperse, or an officer has called upon those present

to assist in suppressing the riot, no one can maintain the status of innocent bystander. If one thereafter remains at the scene of the riot and lends no aid in suppressing it, he will himself be deemed a rioter; but up to that time one can be held guilty of riot only by his own act or deed. His conduct does not have to be turbulent nor his language violent to constitute him a rioter. But some word or gesture indicating at least a willingness to assist the rioters must be manifested before one can be held to be a rioter. Mere presence at the scene of the riot is not sufficient. 8 R. C. L. 331; 54 C. J. 835; 2 Brill's Cyclopedia of Criminal Law, § 1020; *Reg. v. Atkinson,* 11 Cox C. C. 330; *State v. McBride,* 19 Mo. 239; *Pennsylvania v. Craig,* Addison's Rep. (Pa.) 190. The rule is tersely stated in 54 C. J. 835:

"Persons merely present at a riot who neither do nor say anything in the furtherance of the offense are not rioters."

Measured by these standards, we find no evidence in the record that justifies the conviction of Anderson on either count.

The situation is different, however, as to Moe, Trafton and Wollertz. There is ample positive evidence of their active participation in the offenses. The evidence is conflicting, but we can concern ourselves only as to whether there was sufficient evidence to take the case to the jury on both counts. In considering the evidence, it must be borne in mind that, when several people are engaged in perpetrating a crime, each is responsible for the acts of the others done in furtherance of the common purpose. So, as here, where a larceny is committed by a number of people by force and violence, all who participate are chargeable with the offenses of larceny and riot. This, even though some take the property without outward manifestations of

force and violence and others manifest force and violence but take no property.

Measured by these rules, we find evidence that Wollertz left the store carrying groceries for which he did not pay. We find evidence that Moe and Trafton, by threat of physical violence, compelled the manager of the store to unlock and open the door, which he had closed and locked after the rioters entered. This evidence of larceny by Wollertz and of force and violence threatened by Moe and Trafton was sufficient to take the case to the jury on both counts as to all of them.

■ Contention is made that there was not sufficient evidence that the value of the groceries taken was in excess of twenty-five dollars. This contention is addressed rather to the weight and credibility of the evidence in that respect than to the absence of such proof. At least two witnesses, the manager of the store and one of his clerks, testified directly that, in the aggregate, more than twenty-five dollars worth of groceries were taken by the rioters. This was sufficient to make a case of grand larceny for the jury.

■ Appellants offered to prove the conditions of poverty and want among the unemployed of Anacortes and Skagit county on and prior to September 3rd. This proof was offered for the purpose of showing a motive and justification for the raid on the Skaggs store, and to show that the raid was spontaneous and not premeditated.

Economic necessity has never been accepted as a defense to a criminal charge. The reason is that, were it ever countenanced, it would leave to the individual the right to take the law into his own hands. In larceny cases, economic necessity is frequently invoked in mitigation of punishment, but has never been recognized as a defense. Nor is it available as a defense to

the charge of riot. The fact that a riot is spontaneous makes it none the less premeditated. Premeditation may, and frequently does, arise on the instant. A lawful assembly may turn into a riotous one in a moment of time over trivial incident or substantial provocation. When it does, those participating are guilty of riot, and neither the cause of the riot nor their reason for participation in it can be interposed as a defense. The causes, great or small, are available to the participants only in mitigation of punishment. The court did not err in rejecting the offer of proof.

Appellants contend they were forced to trial with undue haste, and were not given sufficient time for preparation. The information was filed September 7th. The appellants were arraigned September 8th, and the case was then set for trial on September 15th. The record fails to show any objection at that time to the date of the setting; nor does there appear anywhere in the record any objection to going to trial until motion for new trial was filed. On September 12th, appellants filed a list of witnesses, and requested that subpoenas be issued compelling their attendance. When the case was called for trial, the record shows the following colloquy between the court and appellants:

"THE COURT: You gentlemen don't seem to be represented by a lawyer. A week ago at the time of your arraignment and also the assignment of this case for trial the court offered to appoint, if you requested, an attorney to defend you. The court is ready to do that now if you so desire. MR. MOE: We don't care to have an attorney. THE COURT: You don't, how about the rest of these gentlemen? MR. ANDERSON: Your Honor, we feel that the appointment of an attorney who is unfamiliar with the case and whose only consideration would be a fee, would possibly do the defense no good, and we respectfully request that we plead our own case. MR. TRAFTON: We are all heartily agreed on the same thing. . . . MR. WOLLERTZ: I am too."

We are satisfied, from the record, that appellants went to trial voluntarily and without objection on September 15th; that they had a full and fair opportunity to present, and did in fact present, all defenses that were available to them. They cannot, after an adverse verdict, be heard to say for the first time that they were too speedily brought to trial.

It is next contended that the prosecuting attorney was guilty of prejudicial misconduct, in his closing argument to the jury, by referring to appellants as radicals and communists. The court immediately instructed the jury to disregard the remark. However, we do not regard the remark as misconduct in the light of the facts developed and the arguments made by the appellants themselves.

During the examinations of jurors on *voir dire,* appellants referred to themselves as militant members of labor organizations, and brought out the fact that two of their number were members of the Communist party. One of the appellants, in his argument to the jury, said:

"The groceries were taken, of course, but remember this, there is a higher law that says that a person holds his responsibility to himself first. There is a law of self-preservation, and how can you expect a man to go against the most fundamental urges—the most prominent is the quest for food. Even the cave man in days gone by must have food."

The remarks of the prosecutor, now complained of, were made in the course of an argument in answer to the tenets appellants themselves made of record, namely, that, acting under economic necessity, they had the right to disregard and violate the laws of the state. The full context of the prosecutor's argument in this respect was as follows:

"It is not a question with these people here as to whether a crime was committed. Mr. Moe has admitted to you that a crime was committed, so have the rest of

them, but they say to you 'There is a higher law' than the laws of the United States and the state of Washington and we are going to obey that higher law. Has the time come in this country and in our county when the laws of the United States and the laws of the state of Washington are to be ignored by a small group of radicals, and the country turned over to communism?''

Affidavits were filed in support of the motion for new trial, setting up what is alleged to be newly discovered evidence. At most, they merely tender cumulative proof of facts concerning which much evidence was presented at the trial. This is not newly discovered evidence, but a proffer to prove the same facts by more witnesses. The motion for new trial was properly denied.

The judgments are affirmed as to appellants Moe, Trafton and Wollertz. The judgment as to Anderson is reversed, and the cause remanded with directions to dismiss the information as to him.

BEALS, C. J., MAIN, TOLMAN, and STEINERT, JJ., concur.