(No. 30703.—)

ILLINOIS BELL TELEPHONE Co., Appellee, *vs.* CHARLES E. Fox *et al.*, Appellants.—(LYNN J. GRACE *et al.*, Co-Appellants.)

*Opinion filed March 24, 1949.*

618

BENJAMIN S. ADAMOWSKI, Corporation Counsel, (L. LOUIS KARTON, FRANCIS T. MORAN, and HERMAN SMITH, of counsel,) all of Chicago, for appellants.

GEARY & STAGMAN, of Chicago, for co-appellants.

SIDLEY, AUSTIN, BURGESS & HARPER, (KENNETH F. BURGESS, WILLIAM H. AVERY, JR., and JAMES EDWARD DAY, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiff, the Illinois Bell Telephone Company, instituted statutory *certiorari* proceedings in the circuit court of Cook County against the defendants, the members of of the zoning board of appeals and the commissioner of buildings of the city of Chicago, seeking the reversal of a decision of the board of appeals (1) denying its original application for approval of a special use of certain described property for a telephone exchange building and (2) affirming a decision of the commissioner of buildings denying its application for a building permit. Eighteen interested property owners intervened in the proceeding. From a judgment reversing and setting aside the decision of the board of appeals in its entirety and ordering the approval of the special use and the issuance of a building permit, defendants prosecute this appeal and are joined

by the property owners. The circuit court certified that the validity of an ordinance is involved and that the public interest requires a direct appeal to this court.

The property in question is located at the northeast corner of West Adams Street and South St. Louis Avenue, in Chicago, and consists of a large corner lot, acquired by condemnation, and two narrow adjoining lots fronting on West Adams Street, purchased at a later date. Commonly known as 3448-60 West Adams Street, the three parcels have an aggregate frontage of 150 feet on West Adams Street and a depth of 181 feet along and parallel to South St. Louis Avenue. In February, 1947, plaintiff applied to the commissioner of buildings for a permit to erect a telephone exchange building according to plans and specifications accompanying the application and subject to the approval of the special use by the board of appeals. The building commissioner denied the application, adding the notation that the "Proposed improvement does not conform with requirements of zoning ordinance."

Plaintiff prosecuted an appeal to the zoning board of appeals and, at the same time, made an original application to the board for the approval of a special use of the property for the erection of a telephone exchange. A public hearing was held and, in all, twenty property owners representing approximately twenty per cent of the property fronting on West Adams Street in the 3400 and 3500 blocks made written or oral objections to the proposed special use. No objections were received from property owners on South St. Louis Avenue. The property owners were represented by counsel, and several, including a member of the city council and the bailiff of the municipal court of Chicago, presented oral objections before the board. The property owners were heard first and, in substance, testified that the site selected for the new telephone exchange was in the center of a long-established residential district; that both sides of the 3400 block on West Adams Street were

lined with single-family and duplex dwellings; that the proposed special use would make the neighborhood less attractive as a home community and residential area, and, consequently, depreciate property values, and that the exchange building could just as well be located in a commercial zone on Madison Street, two blocks to the north, or in a business district on Fifth Avenue, a block and a half to the south.

From the testimony of a plant extension engineer and an equipment and building engineer for the telephone company, it developed that the proposed exchange will furnish automatic dial service to the new Kedzie telephone district; that the new district will include the old Kedzie district and part of the Lawndale district to the south; that there are 2000 unfilled orders for telephone service in the district and the number is increasing; that the existing Kedzie exchange, located one block east and a block and a half north of the new site, is manually operated, has ceilings too low to permit the installation of automatic dial service equipment and the building cannot be enlarged for either manual or automatic operation because it is surrounded by an alley; that the intersection of West Adams Street and South St. Louis Avenue is the wire center of the new Kedzie district; that, because any other location would require the lengthening of more wires than would be shortened, the wire center is the most economical location for a telephone exchange; that the selection of another site a few blocks in any direction would also increase the cost because of higher land values, and that the new exchange will provide efficient telephone service adequate to take care of all future demands for service.

A third engineer stated that the building will be operated solely as a telephone exchange and not as a combination exchange and business office; that only ninety persons will be employed there instead of the usual three hundred at a manually operated exchange of the same size, and that

a parking lot adjacent to the building will eliminate street parking by employees. According to the same witness, the new building will be of modern design, brick construction, completely air conditioned, acoustically treated, and equipped with florescent lighting and no noise or odors will emanate therefrom.

The last witness, a realtor of vast experience, had been engaged by plaintiff to assist in the selection of a site for the new exchange. From his investigation, he reported that the area was heavily built up with houses and apartment buildings, mostly on narrow lots, and that there were practically no vacant lots in the neighborhood. The northeast corner of West Adams Street and South St. Louis Avenue, in addition to being at the wire center, was also selected because it was one of the largest lots in the area and because the erection of the telephone exchange on the large corner lot and the two narrow adjoining lots would involve the smallest number of landowners and the destruction of only two single-family dwellings. After pointing out that the proposed building is no larger than a high school building one block west and one block north of the site selected, the witness expressed the opinion that the telephone building will not reduce the value of properties on West Adams Street or in the immediate neighborhood.

More important than the testimony of the property owners, however, was their denial of the power of the board of appeals to approve the application for a special use, because the proposed structure exceeds both the maximum ground area and height prescribed by the zoning ordinance. A consideration of the contention advanced requires a brief review of the zoning ordinance. By section 2, a telephone exchange is defined as a special use. Nine named use districts are created by section 4 and the next nine sections designate the uses permitted in each district. A telephone exchange is not a permitted use in any district except an industrial district. Section 14 pro-

vides for the establishment of four-numbered volume districts. Zoning limitations on the height, ground area and volume of buildings and on the location of building lines are imposed by volume districts. The simultaneous regulation of both the use of land and buildings and the height and volume of buildings is accomplished by superimposing volume districts on use districts. Thus, zoning maps attached to and made a part of the ordinance disclose that the property in controversy is located in a second-volume apartment-house district. Sections 15 through 18 establish specific building limitations in volume districts. Insofar as pertinent, section 15 provides: "In 2nd Volume districts, the maximum ground area of all buildings, exclusive of garage, is 45 per cent of the area of a corner lot and 40 per cent of the area of any other lot in Family Residence, Duplex Residence, Group House or Apartment House districts." Section 16 ordains, "The maximum height of any building is 25 feet in 1st Volume districts and 45 feet in 2nd Volume districts." By section 22, the power to authorize variations from the provisions of the ordinance governing land use and the construction of buildings is reserved to the city council, the function of the board of appeals being limited to holding public hearings and making fact-finding reports to the city council.

Section 24 is the section in controversy. There, it is provided that, "Subject to the rules set forth in this Section 24, the Board of Appeals shall approve any special use of any lot area or building within any use district if, after a public hearing pursuant to notice as provided by the laws of this State in cases of variations, it has determined that the special use is necessary at that location for public convenience. No special use shall be approved in a Family Residence, Duplex Residence or Group House district, excepting (a) a municipal recreation building or community center; (b) a public park or playground; (c) a railroad, right of way or passenger station; (d) a

bus terminal or street railway terminal. No special use shall be approved in an Apartment House or Specialty Shop district, excepting (a) any special use which may be approved in a Family Residence, Duplex Residence or Group House district; (b) a hospital or sanitarium for the care of contagious diseases or incurable patients; (c) an institution for the care of the insane or feeblminded; (d) a parking lot; (e) a telephone exchange; (f) an electric substation." Section 25, entitled, "Variations and special uses with conditions," declares that "The City Council or the Board of Appeals, as the case may be, may impose such conditions and restrictions upon the use of premises benefited by a variation or by an approval of a special use as may be necessary to minimize the effect of any non conforming use or special use upon adjacent property."

According to the plans and specifications submitted with the application for a special use, the proposed telephone exchange building will be fifty-nine feet in height and will occupy a ground area in excess of sixty per cent of the area of the property. Contending the restrictions on ground area and height imposed by sections 15 and 16 are applicable to special uses under section 24, the property owners asserted that the board had no power or authority to approve a special use in the instant case. Subsequently, with one member dissenting and another not participating, the board of appeals, by formal resolution, denied the application for a special use for the reason that both the ground area and the height were in excess of the respective maximums permitted by sections 15 and 16. The appeal from the refusal of the commissioner of buildings to issue a permit was also denied. A written memorandum adopted by the majority of the board indicated they were of the opinion that the erection of a telephone exchange, of the general type described, was necessary in the vicinity of the proposed location for public convenience and that there was merit to the telephone company's contention that the

site in question is the proper location for the erection of the building. From this, it is evident that the application was rejected solely on the ground that it amounted to a petition for a variation and that the board was without authority to grant a variation.

Alleging that the decision of the board of appeals was illegal, the telephone company instituted *certiorari* proceedings in the circuit court. There, the cause was heard on the record made before the board of appeals and, also, on additional evidence introduced in the circuit court, pursuant to the permissive provisions of the zoning statute. (Ill. Rev. Stat. 1947, chap. 24, par. 73-6.) Defendants interposed numerous objections to the introduction of this evidence, among them the contention that the provision of the statute authorizing additional evidence was void because it was an unconstitutional delegation of executive power to a branch of the judicial department in violation of the doctrine of separation of powers. All objections were overruled, and the evidence, consisting largely of exhibits, was admitted. The first exhibit was an offer of proof that an engineer of the telephone company, if called as a witness, would testify that the equipment for automatic dial telephone exchanges is designed and manufactured for standard layouts calling for buildings consisting of a basement and four high-ceilinged floors, and that, in 1942, only two of the twenty-eight telephone exchanges in the city were less than forty-five feet in height and yet twenty-five were located in first and second volume districts. A second exhibit consisted of certified copies of seven decisions entered by the board of appeals between July, 1946, and March, 1947, disclosing that the board had approved seven different applications for new telephone exchanges or additions to old exchanges in first and second volume districts. In each case, the building or addition exceeded either maximum area restrictions of section 15 or the maximum height limitations imposed by section 16, or

both. Maps of telephone districts and volume districts, photographs of the property in question and other locations in the neighborhood, and a certified copy of an order in the condemnation proceedings by which plaintiff acquired the corner lot, were also received in evidence. Lastly, there was a letter, dated December 24, 1941, about one year prior to the adoption of section 24 in its present form, written by the chairman of the city council's subcommittee on re-zoning to a vice-president of the telephone company advising that, "Telephone exchanges under the proposed ordinance are a special use and the coverage height and volume provisions of the district in which the exchange is located do not apply to the public utility."

Subsequently, the circuit court entered a judgment reversing and setting aside the decision of the board of appeals in its entirety. Sections 15 and 16 of the zoning ordinance were held to be inapplicable to special uses under section 24. Furthermore, the court found that a special use of the property in question as a telephone exchange was necessary for the public convenience. Consequently, as part of the judgment order, the board of appeals was directed to issue a written approval of the application for a special use and the commissioner of public buildings was ordered to issue the necessary building permit.

Although the respective parties advance numerous contentions, the fundamental issue presented for determination is the proper construction of section 24 of the zoning ordinance. To the extent, however, that certain evidence adduced in the circuit court pertains to the construction of the ordinance, a preliminary question arises as to the validity of the statute permitting the introduction of such evidence. In pertinent part, section 73-6 of the Revised Cities and Villages Act provides as follows: "All persons * * * aggrieved by any decision of the board of appeals * * * may present to a court of record a verified petition setting forth that the decision is illegal, in whole or

in part, and specifying the grounds of the illegality * * * If, upon the hearing, it appears to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a referee to take such evidence as it may direct * * *. The evidence, findings and conclusions shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review." As related, defendants contend that the statute constitutes an unconstitutional delegation of executive power to a branch of the judicial department. Although section 73-6 has been before this court frequently, its validity has not heretofore been challenged on the basis now urged and its constitutionality has always been assumed. *Dube* v. *Allman,* 396 Ill. 470; *Park Ridge Fuel and Material Co.* v. *City of Park Ridge,* 335 Ill. 509; *Hughes* v. *Board of Appeals,* 325 Ill. 109.

The doctrine of separation of powers, declaratory of one of the fundamental principles of our system of government, is embodied in article III of our constitution. By virtue of the constitutional prohibition, neither the legislative, the executive, nor the judicial department may exercise the powers properly belonging to either of the other two. (*Saxeby* v. *Sonnemann,* 318 Ill. 600; *McQuade* v. *City of Joliet,* 293 Ill. 515.) The question to be decided here is whether the statute in question imposes executive functions and duties on courts of record in *certiorari* proceedings involving the review of decisions of zoning boards of appeals. While a board of appeals is an administrative agency and an arm of the executive branch of the government, (*Welton* v. *Hamilton,* 344 Ill. 82,) the power of the court to determine the legality of a decision of an administrative agency on review is, beyond doubt, a proper judicial function. A branch of the judiciary does not exercise executive or administrative power unless there

devolves upon the court the same power to exercise discretion as has been committed to the administrative agency. (*Borreson* v. *Department of Public Welfare*, 368 Ill. 425.) Whether a court is empowered to hear additional evidence upon review of an administrative decision is immaterial, provided that the court is not also authorized to substitute its own judgment, founded on the record as enlarged, for that of the administrative body on matters properly within the province of administrative discretion. By the terms of the statute in question, however, the sole function of courts of record is to determine the alleged illegality of decisions of boards of appeals, and the courts are neither authorized nor called upon to exercise the powers of administrative discretion vested in boards of appeals. The duties of the courts relate to such judicial functions as a review of the jurisdiction of the board of appeals, determining whether the board has proceeded in conformity with prescribed procedures, and the construction and determination of the validity of zoning ordinances and their application to particular properties. The challenged provision of section 73-6 of the Revised Cities and Villages Act does not grant courts of record the power to exercise administrative discretion. Since the statute is legal and valid, the circuit court did not err in admitting additional evidence.

Returning to the fundamental issue of the proper construction of section 24 of the zoning ordinance, the precise question here presented for determination is whether sections 15 and 16, imposing restrictions on ground area and height, are applicable to special uses under section 24. The rules for the construction of an ordinance are the same as those applied in the construction of a statute. (*Dean Milk Co.* v. *City of Chicago*, 385 Ill. 565; *People ex rel. Dwight* v. *Chicago Railways Co.* 270 Ill. 87.) As in the case of statutes, the primary rule for the construction and interpretation of ordinances is to ascertain and

give effect to the intention of the law-making body. (*People ex rel. Schriver* v. *Frazier*, 386 Ill. 620; *People ex rel. Toman* v. *Chicago Great Western Railroad Co.* 379 Ill. 594.) Furthermore, under familiar principles, a statute itself affords the best means of its exposition, and if the legislative intent can be ascertained from the provisions of the statute that intent will prevail without resort to other aids for its construction. (*Deutsch* v. *Department of Insurance*, 397 Ill. 218; *People ex rel. Blome* v. *Nudelman*, 373 Ill. 220.) Accordingly, the general scheme of the ordinance and the specific language of section 24 must be first considered. The earlier provisions of the ordinance, sections 3 to 18, inclusive, are entirely concerned with the imposition of zoning restrictions. There follows a number of sections relating to exceptions to the ordinance, such as nonconforming uses and variations, among them section 24 pertaining to special uses. A question of construction arises because sections 15 and 16 imposing maximum limits on the ground area and height of buildings do not specifically include special uses and section 24 does specifically exclude the operation of sections 15 and 16 as to special uses.

Section 24 commences with the rather unusual phrase, "Subject to the rules set forth in this Section 24." To these words some meaning must be ascribed, yet, apart from the quoted phrase, the power of the board of appeals under section 24 is, of course, subject to the rules there set forth. Unless these words be regarded as superfluous, they constitute an important indication of the intention of the city council. A review of the entire ordinance reveals that it is a well-drawn, carefully worded, comprehensive enactment and there is no other evidence of superfluous or redundant language. If possible, no legislative enactment should be so construed as to render any sentence, phrase or word superfluous, void or insignificant. (*Wells Bros. Co.* v. *Industrial Com.* 285 Ill. 647; *Bigelow* v. *Burnside*, 269 Ill.

324.) Rejecting an interpretation which would render the introductory clause nugatory, we hold that the circuit court fairly and reasonably construed the words, "Subject to the rules set forth in this Section 24," to mean that the special uses mentioned in section 24 are subject only to the rules contained in section 24. We are aided in this interpretation of legislative intent by reason of the location of section 24 among other sections relating to exceptions and exclusions from the restrictive provisions of the earlier sections of the ordinance. Read in the light of this construction, section 24 provides that the special uses there enumerated are subject only to the rules therein set forth. Thus, sections 15 and 16 can have no application to section 24 and the only test of approval of a special use is whether it is necessary at a particular location for public convenience and necessity.

The provision of section 25 that the board of appeals may impose such conditions and restrictions on special uses as may be necessary to minimize the effect of a special use on adjoining property, confirms this construction. Section 25 would be virtually meaningless unless it were contemplated that special uses permitted under section 24 were not to be limited to the maximum height and ground area imposed by sections 15 and 16. If special uses under section 24 are subject to the ordinary restrictions on height and volume there would be no occasion for imposing further conditions and restrictions. Lastly, the prior decisions of the board of appeals and the interpretation made by the chairman of the subcommittee of the city council on zoning prior to the adoption of the ordinance, while of no great probative force, also tend to confirm the construction of the ordinance by the circuit court.

In support of a contrary construction, defendants contend that section 24, as construed by the circuit court, results in an uncircumscribed delegation of legislative power to the board of appeals and is, therefore, unconstitutional.

Defendants take the view that if sections 15 and 16 are not applicable to special uses under section 24, the board has unfettered discretion to establish the maximum volume and height of buildings erected for special uses, there being no rules or standards in the ordinance to guide the board in the exercise of its discretion. Apart from the questionable propriety of the action of a zoning board of appeals in attacking the constitutionality of a provision of the zoning ordinance it was created to enforce, we observe that section 24 does not purport to authorize the board of appeals to exercise discretion as to the height and volume of buildings. Simply stated, the board is not empowered by section 24 to impose any volume restrictions whatsoever on the height and ground area of special use structures. There being no delegation of legislative discretion in section 24, the argument must fall.

Defendants also contend that section 25 is subject to the same infirmity, asserting that any power the board may possess to regulate the height, area, or volume of buildings by virtue of this section is illegal and void for the want of adequate rules and standards. The argument presupposes that the constitutional validity of section 25 is at issue in the present proceeding. Defendants ignore the fact that neither the board of appeals nor the circuit court made any ruling with respect to this section. Furthermore, no restrictions as to ground area, height or volume have been imposed on the telephone company under section 25, or any other section. It follows, therefore, that the power of the board of appeals under section 25 is not at issue in this cause.

Finally, defendants contend plaintiff has not shown that a telephone exchange is necessary, at the proposed site, for public convenience. Because two witnesses for plaintiff testified that they investigated all properties within approximately half a mile of the wire center of the telephone district, defendants conclude that any site within the area

described would be satisfactory and that it is not necessary to erect an exchange at the site finally selected. Defendants misinterpret the obvious import of the word "necessary" appearing in the statute. A word of great flexibility, "necessary" may mean "absolutely necessary" or "indispensable," or, less restrictively, "expedient" or "reasonably convenient." (*Brooks* v. *Chicago,. Wilmington and Vermilion Coal Co.* 234 Ill. 372; *Aurora and Geneva Railway Co.* v. *Harvey*, 178 Ill. 477.) If plaintiff must show that the site selected is absolutely necessary and indispensable for the rendition of telephone service, then section 24 is both unworkable and absurd. No particular site within the entire telephone district is absolutely necessary, and the same objection as here advanced could be made no matter what location was selected. Under the circumstances, we are impelled to hold that any reasonably convenient or expedient location is a necessary location, within the contemplation of the ordinance. In addition, the uncontroverted evidence in the record discloses that a new telephone exchange is needed to meet the increasing demand for service, that the proposed site is at the exact wire center of the telephone district and that the wire center is the most practical, convenient and economical location for the new exchange. There being conclusive proof that the erection of a telephone exchange was necessary, at the proposed site, for public convenience, and there being no evidence to the contrary, the board had no discretion to deny plaintiff's application. Section 24 provides that the "* * * board of appeals shall approve any special use" where the use is necessary for public convenience, and, upon the affirmative showing made by plaintiff, it became mandatory for the board to approve the application for a special use.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*