THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH T. TURNER *et al.*, Defendants-Appellants.

Second District   Nos. 2—91—0639, 2—91—0640 cons.

Opinion filed August 17, 1993.

INGLIS, P.J., dissenting.

G. Joseph Weller and Ingrid L. Moller, both of State Appellate Defender's Office, of Elgin, for appellants.

James E. Ryan, State's Attorney, of Wheaton, Brian L. Buzard, of Mt. Morris, and Jay Wiegman, of Springfield (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

Following a bench trial, defendants, Kenneth Turner and Luvenia Givens, were each found guilty of one count of cruelty to children (Ill. Rev. Stat. 1989, ch. 23, par. 2368 (now 720 ILCS 115/53 (West 1992))). Defendants were sentenced to 30 months' probation with counselling and ordered to pay costs. Defendants filed a timely appeal asserting that (1) the State failed to prove beyond a reasonable doubt that defendants unnecessarily exposed their children to the inclemency of the weather; (2) the trial court erred by considering evidence that defendants had left their children unattended in a car on a previous occasion; and (3) victims assistance fines were improperly imposed by the circuit clerk.

On January 4, 1991, defendants were living in an apartment in Woodridge with their children, Kenyatta Givens, then age nine, and Keenath Turner, then age two. A friend of defendant Turner, Harry Campbell, also lived with them.

Defendants both worked as paper stuffers at the Chicago Tribune distribution center in Downers Grove where they inserted various sections into the newspaper. They were regularly scheduled to work on Thursdays, Fridays, and Saturdays, and they worked irregular hours during the rest of the week. Defendant Turner was also employed delivering papers. On Friday, January 4, defendants were scheduled to work from 3:30 p.m. until they were finished or had to leave. The testimony of defendants' supervisor indicated the paper-stuffing crew worked that evening until at least 2 a.m. the following morning. Defendants were paid a certain amount for each paper they completed, rather than hourly.

At about 3 p.m. on January 4, 1991, defendant Turner attempted to phone Campbell from a convenience store to assure that he would be able to watch the children. Defendants also called their respective mothers and Turner's brother, but none of them were able to baby-sit.

Unable to secure a baby-sitter, defendants drove to work, parked on the street, left the children in the car, and went to work inside the building. Evidence showed that the temperature that evening was 21 degrees Fahrenheit.

At about 6:30 p.m. someone called the Downers Grove police to report that two children had been left in a car for approximately three hours. Officer David Franklin arrived at the Tribune building at about 6:40 and found the children huddled together inside the car. The car was not running, and its windows were covered with frost from the cold. Although Kenyatta testified that she had had gloves, a hood, and a cover with her, the police officers testified that neither child had gloves or a hat, nor was there a blanket in the car. The two-year-old had a running nose and his diaper needed changing. There was also neither food nor water in the car. The older child initially told police she was cold but later stated that she really was not. Paramedics found no physical harm to the children. Defendants were arrested and charged with cruelty to children, a Class 4 felony.

At trial, Campbell explained that he had known Turner since they were in the fifth grade. In June 1989, defendants were unemployed and homeless and lived in their car until they secured employment at the Tribune. Campbell moved in with defendants shortly after they found an apartment. He lived with them rent-free in exchange for periodically baby-sitting the children. Occasionally, he would stop by the Tribune on his way home from work to see if the children were waiting in the car for him to baby-sit. This would happen approximately three times per month. Defendant Turner admitted that there had been no arrangement made for Campbell to baby-sit the children on January 4, 1991. On that day Campbell worked late, getting off at 5:30. He did not think the children would require baby-sitting at that late hour, and so he proceeded directly home.

Tim Yarcheeta testified that he is a supervisor at the Tribune. Defendants would sometimes work for him and were doing so on January 4. Defendants were scheduled to work until they finished all the papers or until they "had to leave." Yarcheeta recalled that in November 1990 he had told Turner that he could bring the children into the building. Defendant, however, had also worked under another supervisor, known as "Bug." Yarcheeta and Bug each supervised one-half of the work area in the Tribune's warehouse. Bug had told Turner once before that it would not be wise to bring his children into the building because the employer had no liability insurance to cover them. Also, there had previously been problems with unsupervised children running around in the work area, and Yarcheeta had told

Bug on a prior occasion to tell his people to keep their children out of Yarcheeta's side of the warehouse.

Two Markham police officers testified that defendants had previously been arrested after a child was found left alone in Givens' car outside the Markham police station in October 1989.

The court found defendants guilty. After denying their post-trial motions, it sentenced them to 30 months' probation, including counseling.

Defendants' first contention on appeal is that the State failed to prove beyond a reasonable doubt that they wilfully and unnecessarily exposed their children to the inclemency of the weather. The statute under which defendants were convicted provides:

> "Any person who shall wilfully and unnecessarily expose to the inclemency of the weather, or shall in any other manner injure in health or limb, any child, apprentice, or other person under his legal control, shall be guilty of a Class 4 felony." Ill. Rev. Stat. 1989, ch. 23, par. 2368 (now 720 ILCS 115/53 (West 1992)).

Defendants contend that the State was required to prove beyond a reasonable doubt that the exposure of the children was done "unnecessarily." They further contend that the State failed to meet its burden with respect to this element of the offense. Defendants presented evidence that they feared losing their jobs and perhaps becoming homeless again, that they were unable to afford to pay a baby-sitter, and that they had attempted unsuccessfully to find someone to watch the children. Moreover, they received mixed signals from Tribune supervisors concerning whether the children could stay inside the building.

The State does not contest that it had the burden of proving lack of necessity but contends that the evidence was sufficient. According to the State, the evidence established that other options were available, such as bringing the children inside or having one of the parents stay home from work. Therefore, leaving them in the car and exposing them to the weather was unnecessary.

■ Initially, we agree that where the crime of cruelty to a child is based upon exposure to the inclemency of the weather, the lack of necessity is an element of the offense which the State is required to prove beyond a reasonable doubt. (See *People v. Miller* (1983), 116 Ill. App. 3d 361, 365-67.) Whether defendants *unnecessarily* exposed their children to the inclemency of the weather was a question of fact which must be resolved by considering all the attendant circumstances. *Cf. People v. Gaurige* (1988), 168 Ill. App. 3d 855, 865 (fac-

tual determination regarding whether actions taken in self-defense were necessary depends upon the surrounding facts and circumstances of the case).

Due process requires that the prosecution prove beyond a reasonable doubt all the elements included in the definition of the charged offense. (*Patterson v. New York* (1977), 432 U.S. 197, 210, 53 L. Ed. 2d 281, 292, 97 S. Ct. 2319, 2327.) The standard for reviewing whether sufficient evidence was presented to support a criminal conviction is whether, after considering all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. (*People v. Wittenmyer* (1992), 151 Ill. 2d 175, 190; *People v. Campbell* (1992), 146 Ill. 2d 363, 374.) A reviewing court will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses, and will not reverse a criminal conviction unless the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Campbell*, 146 Ill. 2d at 375.

"Necessary" and the related term "unnecessarily" are commonly used in the law, and their meaning has a great flexibility depending upon the context in which they are used. (See *Illinois Bell Telephone Co. v. Fox* (1949), 402 Ill. 617, 631.) "Necessity" can encompass that which is "absolutely necessary," "indispensable," "expedient," or merely "reasonably convenient." (*Illinois Bell*, 402 Ill. at 631.) In the context of the affirmative defense of necessity, the meaning is very restrictive; it applies only in situations which the defendant is blameless in occasioning or developing, and then only to conduct which the defendant reasonably believes is necessary to avoid a public or private injury greater than that which might reasonably result from that conduct. (720 ILCS 5/7—13 (West 1992).) Because the legislature has not defined the term "unnecessarily," as it is used in section 53 of "An Act to revise the law in relation to criminal jurisprudence" (the Criminal Jurisprudence Act) (720 ILCS 115/53 (West 1992)), we must ascertain and give effect to the intent and meaning of the legislature. (See *People v. Frieberg* (1992), 147 Ill. 2d 326, 345.) In making this determination, we may properly consider not only the language of the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved. *Frieberg*, 147 Ill. 2d at 345.

The statute, enacted in 1874 (Ill. Rev. Stat. 1874, ch. 38, par. 53), codified and broadened the common law crime of cruelty to children, as established in *Rex v. Ridley* (1811), 2 Campbell 650, and it was in-

tended to make it an offense to in any manner wilfully do such acts as to injure the health of a child under one's legal control. (See *Miller*, 116 Ill. App. 3d at 365-67; *People v. Lynam* (1895), 65 Ill. App. 687, 688-89.) The law furthers the common legislative purpose of protecting children, who are particularly vulnerable to abuse by a caretaker, and establishing certain basic responsibilities for those entrusted with the legal control of a youth. (See, *e.g.*, 720 ILCS 150/4 (West 1992); see also 720 ILCS 5/12—21 (West 1992) (establishing criminal penalties for caretakers of elderly or disabled persons who fail to perform acts which are necessary to preserve the life of individuals for whom they are responsible).) Considering that the care and discipline of children is a difficult and multifaceted responsibility, we recognize that we must take care in construing the types of conduct prohibited by section 53 so that we adequately protect children, but at the same time avoid placing an impossible or unreasonable burden upon their parents and guardians. The crime of cruelty to children, however, is clearly intended as a preventative measure, and it does not require as an element that the child or children being exposed incur any actual physical injury. (See *Lynam*, 65 Ill. App. at 689.) Whether a child's caretaker unnecessarily exposed the child to the inclemency of the weather must, therefore, be determined by focusing upon the risk to the child rather than the result of the exposure.

Several cases have addressed a concern that otherwise acceptable disciplinary acts might violate section 53 if the statute were given a literal meaning. (See *People v. Tomlianovich* (1987), 161 Ill. App. 3d 241, 242-43; *People v. Virgin* (1978), 60 Ill. App. 3d 964, 966-68.) Our courts have resolved such conflicts by applying an element of "reasonableness" to cases in which a child has been injured by a caretaker or parent's conduct in administering discipline. " '[A] parent's disciplinary authority over his children "must be exercised within the bounds of reason and humanity." *** [P]arental rights of discipline are limited by a standard of reasonableness.' " (*Virgin*, 60 Ill. App. 3d at 968, quoting *People v. Ball* (1974), 58 Ill. 2d 36, 39.) We believe that the underlying test of reasonableness must also apply when the crime of cruelty to children is based upon exposing a child to the inclemency of the weather. Reasonableness, in this context, is thus incorporated into the concept of necessity. For example, it will generally be reasonable and not viewed as an unnecessary exposure for parents to allow their children to play outside in the wintertime. If, however, the parents fail to properly dress the children, if the weather conditions are too extreme, or if the children are forced to remain outside for an excessive period of time, the parents' conduct can be determined to un-

reasonably and unnecessarily place the children at risk of harm. Again, the question of necessity is a factual one which must be determined based upon the facts and circumstances surrounding each individual case.

Interpreting a similar statutory provision, the Michigan Supreme Court in 1858 commented as follows:

"Did the acts of the party leaving or abandoning the child, viewed in connection with the time, place, and all the accompanying and surrounding circumstances, subject the child to the hazard of such personal injury? If so, this is an exposure. The law cannot enumerate the chances, nor fix upon any *degree* of risk as the dividing line between impunity and crime. And any rule, based upon an attempted distinction of this kind would be clearly giving impunity to crime, or be so vague as to be wholly unintelligible. *** The law can recognize no degree of hazard *** as void of criminality. We do not intend. *** to say that a bare *possibility* of injury would constitute the exposure; but the only safe and practical rule upon this point, we think, is this: If, from the time, place, and manner of leaving the child—its age, dress, the state of the weather, and all the circumstances surrounding and accompanying the transaction— *** there was a reasonable ground to apprehend, or fear, that such injury might thereby happen to the child, *** it is an exposure *** but if, judging from the like premises, there was no reasonable ground to fear or apprehend that such injury might occur, then the exposure *** did not exist. *** [I]f the child be left at such a time, in such a place, and under such circumstances, as would render a parent, or other person (to whom it is confided) of ordinary prudence and humanity, reasonably apprehensive of such injury to the child, then the hazard may be said to exist, and it is an exposure within the statute." (Emphasis in original.) *Shannon v. People* (1858), 5 Mich. 72, 92-93.

In the present case, defendants argue that their actions were justified because of the necessity to earn an income which would enable them to provide food and shelter to the family. Economic necessity, however, such as the theft of food, has never been recognized or accepted as a defense to otherwise criminal conduct. (See 720 ILCS Ann. 5/7—13, Committee Comments—1961, at 400 (Smith-Hurd 1993); *State v. Moe* (1933), 174 Wash. 303, 307, 24 P.2d 638, 640 ("[E]conomic necessity is frequently invoked in mitigation of punishment, but has never been recognized as a defense"); *Rex v. Holden* (Cr. Cas. Res. 1809), 168 Eng. Rep. 607.) Although we find that actions deemed

"necessary" under section 53 of the Criminal Jurisprudence Act (720 ILCS 115/53 (West 1992)) encompass a broader range than that permitted under the affirmative defense of necessity under section 7—13 of the Criminal Code of 1961 (720 ILCS 5/7—13 (West 1992)), the preclusion of economically necessary conduct as a justification still applies. To hold otherwise would be a contradiction of the legislature's intent to protect children. If the facts of the present case are taken to a hypothetical extreme and it is assumed that the temperature had been 20 degrees below zero, rather than 20 above, would defendants' conduct be excusable because one of them might have lost a job by choosing to remain at home with the children? Although defendants were faced with a difficult decision, it was the function of the fact finder to determine from all the circumstances whether their decision to leave the children locked in the car on that cold winter day was unreasonable and unnecessary.

■ Reviewing the attendant circumstances, we note that one of the two children was only two years old. The children were locked in the car for more than three hours, and the temperature outside was well below freezing. The windows of the car had frosted over from the cold. The trial court made a factual determination that this exposure was unnecessary. Based upon the facts, viewed in a light most favorable to the prosecution, we conclude that there was sufficient evidence to support the trial court's determination. A risk to the children, especially the two-year-old, existed, and either of the defendants could have elected to stay home with the children rather than go to work. We recognize the fact that this family was struggling financially, and that if either defendant had stayed with the children and became unemployed the family might have suffered further hardship. That consideration alone, however, does not excuse defendants from the responsibility of acting on the more immediate priority of protecting the children from an imminent threat to their health and safety. The unfortunate financial dilemma confronting this family was an important extenuating factor which apparently was considered by the trial court in determining the appropriate sentencing disposition.

■ Defendants next argue that the trial court erred by failing to grant their motions *in limine* to bar the introduction of other crimes evidence. We can find no copy of any such motion in the record provided on appeal. Also, after reviewing the trial testimony, we find no mention of any such motion, or any related objection, until after Officer Barron had testified on this subject. It is the responsibility of the party making an assertion of error to preserve the asserted error and present a sufficient record for review. (*People v. Smith* (1985), 106 Ill.

2d 327, 334-35; *People v. Odumuyiwa* (1989), 188 Ill. App. 3d 40, 45-46.) Despite the inadequate record submitted by defendants, the subsequent arguments of counsel and the ruling of the court indicate that a motion was made regarding the introduction of this evidence, and they also provide us with a sufficient basis upon which to address this question. Defendants argue that evidence of defendants' previous arrest for leaving one of their children locked in their car was erroneously admitted and prejudiced their case by raising the inference that they were more likely to have committed the current crime. The State responds that the prior, similar crime demonstrated defendants' knowledge of the dangers inherent in exposing their children to the inclemency of the weather, and also that any error which occurred was harmless because defendants admitted the act of leaving their children in the car.

Other crimes evidence is admissible to prove *modus operandi*, intent, identity, motive, or absence of mistake, or if it is relevant to establish any material question other than the propensity to commit a crime. (*People v. Thingvold* (1991), 145 Ill. 2d 441, 452; *People v. Contreras* (1993), 246 Ill. App. 3d 502, 512.) When such evidence is offered, the trial court must weigh the relevance of the evidence against the prejudicial effect it may have upon the defendant. (*Thingvold*, 145 Ill. 2d at 452; *Contreras*, 246 Ill. App. 3d at 512.) The trial court's ruling as to the admissibility of such evidence will not be reversed absent a clear showing of abuse of discretion. *Thingvold*, 145 Ill. 2d at 452-53; *Contreras*, 246 Ill. App. 3d at 512.

At trial, the State argued that evidence of defendants' prior act of leaving one of their children locked in a car during October 1989 was admissible to prove both wilfulness and an absence of mistake on the part of defendants. (See *People v. McKibbins* (1983), 96 Ill. 2d 176, 182-86; *People v. Harris* (1991), 220 Ill. App. 3d 53, 54-55.) Defendants argue on appeal that their mental state was not in question: "There was no claim of mistake nor issue of wilfulness at trial; there is no dispute that the defendants consciously left the children in the car." We agree with defendants' position that the acts committed by them were not in controversy; rather, the trial focused upon only the issue of whether the acts defendants undisputedly committed constituted a crime in violation of section 53 (720 ILCS 115/53 (West 1992)). Accordingly, we must conclude that the other crimes evidence could have had no relevance to any alleged improper issue of criminal propensity, and the admission of the evidence could have had no bearing on the outcome of this bench trial. We hold, therefore, that any error in admitting this evidence was harmless, and no reversal would be re-

quired. See *People v. Smith* (1984), 102 Ill. 2d 365, 374, *rev'd on other grounds* (1984), 469 U.S. 91, 83 L. Ed. 2d 488, 105 S. Ct. 490; *People v. Nunn* (1989), 184 Ill. App. 3d 253, 267.

■ Finally, defendants challenge the victims assistance fines (Ill. Rev. Stat. 1991, ch. 70, par. 510(c) (now 725 ILCS 240/10(c) (West 1992))) imposed against them. It is clear from the record that the court failed to impose the victims assistance fine as mandated by law. (See *People v. Wisotzke* (1990), 204 Ill. App. 3d 44, 50.) Yet, the fines were somehow charged to defendants at a later time. We therefore vacate that portion of defendants' sentences involving the victims assistance fines and remand to the trial court with directions that the mandatory fine be imposed.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

*Affirmed in part and remanded in part with directions.*

COLWELL, J., concurs.

PRESIDING JUSTICE INGLIS, dissenting:

Although I agree with the majority's reasoning in theory, I respectfully dissent from their decision. In my view, the State did not make its case. It did not prove beyond a reasonable doubt that it was unreasonable for the defendants, *under the circumstances presented,* to leave their small children in a cold car while they went to work. Readers note that I am not unsympathetic to the discomfort that might have been suffered by the children in their three hours in a dark and cold vehicle. Neither do I believe that a struggling working parent may make a cursory attempt to find child care and then be justified in leaving his or her child in a car while the parent shows up for a job that pays the rent and puts food on the table.

The readers of this case are unlikely to have ever been homeless or suffered in a helpless-state of poverty, yet at the heart of this case are two social problems which have increasingly received public attention in recent years: poverty and homelessness.

The facts are clear that the couple before us, convicted of a felony, were recently homeless and desperately in need of money to retain their housing, which they were trying to earn at a marginal labor. We are informed by the record that they have in fact since lost their housing. In this case, the critical question is whether it was proved beyond a reasonable doubt that it was unreasonable for *these defendants,* under *their* circumstances, to do what they did. Homeless-

ness and poverty with marginal employment present facts that are important in determining reasonableness. Under section 53 (Ill. Rev. Stat. 1989, ch. 23, par. 2368), the burden on the question of reasonable necessity was the State's. It had to prove each element of the felony charge beyond a reasonable doubt. *People v. Lynch* (1987), 151 Ill. App. 3d 987, 990.

This was not a case in which the evidence shows that the children were left in a car while the parents were working to afford a new television set or were out drinking or pursuing recreational interests. The State might well have met its burden of proof in this case had it offered evidence of persons who were ready, willing and able to watch the children on January 4. Similarly, the State might have shown that the defendants' finances were such that they could have paid for child care or that one of them could have stayed home from work that evening. No such proof was offered, and without such proof the State has failed to prove that these defendants, under their circumstances, acted "unnecessarily." The defendants appear to have been faced with leaving the children in the car for a few hours or being out on the street as a family in the near future. In my view, the State did not meet its burden of proof on an essential element of the offense, mandating reversal of the defendants' convictions.