THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
RODERICK GRAVES, Defendant-Appellee.

Second District  No. 2—88—1239

Opinion filed April 17, 1990.

274

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Ingrid L. Moller, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Roderick Graves, was charged by information in the circuit court of Du Page County with one count of unlawful possession of less than 15 grams of a substance containing cocaine (Ill. Rev. Stat. 1987, ch. 56½, par. 1402(b)). Following a hearing, the trial court granted defendant's motion to quash his arrest and suppress evidence. The State appeals pursuant to Supreme Court Rule 604(a) (107 Ill. 2d R. 604(a)).

The only issue on appeal is whether the trial court's decision to quash defendant's arrest and suppress the evidence was erroneous.

The only witness to testify at the hearing on defendant's motion was Deputy David Sand of the Du Page County sheriff's department. According to Deputy Sand, he was patrolling in a marked squad car and was in uniform on August 27, 1988. At about 8:50 p.m., he was patrolling a park located at the corner of Roberta and Burdette Streets in an unincorporated area near Glen Ellyn. It was dark at that time, and, according to Deputy Sand, the park closed at dusk.

Deputy Sand observed a small blue Chevrolet parked adjacent to some tennis courts in the park. Its engine was not running, and its lights were off. Deputy Sand turned on his lights and drove towards the parked car, illuminating it. There is no testimony as to what lights Sand turned on or whether he activated his emergency lights.

As Sand drove toward the vehicle, he observed two occupants in the driver's and passenger's seats. He further observed the driver, the defendant, bend over toward the floor and then sit back up.

Sand exited his squad car and approached defendant's vehicle. Upon arriving at defendant's vehicle, Sand asked defendant what he was doing in the park and explained that the park closed at dark. Defendant responded that there was a party nearby on Roberta and that he and his passenger were sitting in the park waiting to go to the party.

Sand then asked both defendant and his passenger for some identification. Defendant produced a driver's license, and the passenger produced nothing. Sand then "ran a check" on defendant's license which indicated there was no record on file. Sand, upon looking closer at the license, discovered that the sex status on the license indicated "F" for female. Sand asked defendant about this, and defendant responded that the Secretary of State had made a mistake. Sand "ran" defendant's license again and the information came back as belonging to a white female. Defendant is a black male.

At that time, based on the discrepancies in defendant's driver's license and the passenger's failure to produce any identification, Sand

asked both persons to exit the vehicle. Sand initially testified that he observed a brown bag under the front seat and two cigarettes he believed to be marijuana cigarettes on the console as defendant exited the vehicle. On redirect, Sand admitted that his police report, which indicated that he observed the two cigarettes before he noticed the brown bag, gave the correct sequence of events.

As to his observation of the two cigarettes, Sand testified that they were "Newport" factory-type cigarettes, except that the non-filtered ends were twisted or rolled and that, based on his experience, they appeared to be marijuana cigarettes. According to Sand, he has observed marijuana cigarettes on previous occasions. He also received training at the police academy on how to recognize illegal substances.

Sand seized the two cigarettes and the brown paper bag. Upon opening the bag he observed two or three plastic bottles full of white powder, a razor blade, a scale, and several 1½- to 1-inch sealable plastic bags. Based on his training and experience, Sand assumed the items to be drug paraphernalia. Sand also unrolled the twisted ends of both cigarettes and observed a white powder mixed with the tobacco. Sand assumed the white powder was cocaine. Sand requested a backup, and after they arrived, he told defendant he was under arrest.

The trial court granted defendant's motion to quash his arrest and suppress the evidence on the basis that there were not circumstances from which Deputy Sand could reasonably infer a crime had been committed, was being committed, or was about to be committed to justify the initial questioning of defendant pursuant to the temporary questioning without arrest authorized by section 107—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 107—14).

The State initially contends on appeal that Deputy Sand's conversation and request for identification do not constitute a stop under the fourth amendment. It further maintains that if the conversation and the request for identification constitutes a stop, such a stop was justified under the facts of this case. Defendant responds that a stop occurred the moment Sand asked for defendant's driver's license and turned to go to his squad car to run a check. Defendant further argues that the stop was unreasonable under the circumstances.

■ A trial court's ruling on a motion to suppress will not be disturbed unless it is manifestly erroneous (*People v. Gacho* (1988), 122 Ill. 2d 221, 237, 522 N.E.2d 1146), although where, as here, neither the facts nor the credibility of the witnesses is questioned, the question is a legal one subject to consideration by this court *de novo*. See

*People v. Abney* (1980), 81 Ill. 2d 159, 168, 407 N.E.2d 543; see also *People v. 1946 Buick, VIN 34423520* (1989), 127 Ill. 2d 374, 378, 537 N.E.2d 748 (where facts are undisputed and decision depends only on interpretation of statute trial court's ruling reviewed as matter of law).

■ Our initial inquiry is to determine when, if at all, a seizure occurred here because the fourth amendment is only implicated at the point that police conduct constitutes a seizure. (*Florida v. Royer* (1983), 460 U.S. 491, 497-98, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324; *People v. Fenton* (1988), 125 Ill. 2d 343, 347, 532 N.E.2d 228.) Not all personal intercourse between the police and a citizen constitutes a seizure, and only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen has a seizure occurred. (*Michigan v. Chesternut* (1988), 486 U.S. 567, 573, 100 L. Ed. 2d 565, 571, 108 S. Ct. 1975, 1979, citing *Terry v. Ohio* (1968), 392 U.S. 1, 19 n.16, 20 L. Ed. 2d 889, 905 n.16, 88 S. Ct. 1868, 1879 n.16; see generally 3 W. LaFave, Search & Seizure: §9.2(h), at 401 (2d ed. 1987).) The test for determining when the police have seized an individual is whether, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave. *Chesternut*, 486 U.S. at 573, 100 L. Ed. 2d at 572, 108 S. Ct. at 1979.

■ Accordingly, we look to the facts present in this case. It is clear that Deputy Sand's actions in driving up to defendant's vehicle from the side when it was parked without its engine running did not constitute a seizure, particularly where there is no evidence that the officer activated any emergency lights or displayed any other overt signs of authority to stop or detain the already parked vehicle. Defendant does not contend otherwise. Nor was the deputy's mere approaching the vehicle to ask defendant what he was doing in the park after dark a seizure. (See *Royer*, 460 U.S. at 497, 75 L. Ed. 2d at 236, 103 S. Ct. at 1324; *People v. Long* (1983), 99 Ill. 2d 219, 231, 457 N.E.2d 1252.) We further do not believe that Sand's asking for identification would have caused a reasonable person to believe he was not free to leave.

■ Nor was the deputy's running a driver's license check, under these circumstances, a seizure. There is no evidence that he ordered defendant to remain in his vehicle while he checked his license (*cf. People v. McVey* (1989), 185 Ill. App. 3d 536, 539, 541 N.E.2d 835 (court held seizure occurred only when officer ordered defendant to have a seat in defendant's car while he ran license check)), nor did he in any other way give defendant the impression he was not free to

leave at that point. We decline to hold, as a bright-line rule, that the deputy's mere running of a driver's license check, without more, rose to the level of a seizure. Rather, we adhere to the traditional contextual approach and hold that in this particular case Deputy Sand's checking on the status of defendant's license did not amount to a seizure. See *Chesternut*, 486 U.S. at 572-73, 100 L. Ed. 2d at 571, 108 S. Ct. at 1979.

■ We believe, however, that a seizure did occur at the point that Sand returned to defendant's vehicle and commenced questioning him about the discrepancy regarding the status of his sex on the driver's license. At that point, under these particular circumstances, it became apparent that Deputy Sand was focusing on the status of defendant's license or the propriety of his possessing it. We believe that a reasonable person would believe he was not free to leave once the deputy began to focus his inquiry on the individual's driver's license as Deputy Sand did here. As a seizure occurred at that point, we must necessarily determine whether it was reasonable under the fourth amendment.

■ To render a temporary detention, such as the one in this case, reasonable, there must be specific, articulable facts which, when taken together with natural inferences, make the intrusion reasonable. (*People v. Smithers* (1980), 83 Ill. 2d 430, 435-36, 415 N.E.2d 327.) Here, Sand testified that he observed the vehicle parked with no lights, after dark, in an area closed to the public at dusk. He further observed the driver bend over and sit back up as he drove up to the vehicle. Additionally, when he asked the occupants what they were doing there, they responded they were waiting to go to a nearby party, an uninformative response, to say the least. Further, upon asking both occupants for identification, the passenger failed to produce any identification and defendant produced a driver's license with a discrepancy as to sex. Under these circumstances, we do not believe it was unreasonable temporarily to detain defendant for the purpose of ascertaining the true status of his driver's license and his true identity.

■ Once Deputy Sand ascertained that the license checked to a white female, and knowing defendant to be a black male, he was further justified in asking defendant and the passenger to exit the vehicle. Moreover, it was also reasonable for Deputy Sand to have the occupants exit the vehicle for his own safety. (See *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330.) Furthermore, as Deputy Sand was in a place he had a right to be when defendant exited the vehicle, there is no constitutional infirmity in his viewing the two cigarettes lying on the console of defendant's vehicle.

Our only remaining inquiry, although not addressed by the trial court or the parties because of the court's ruling that an impermissible stop occurred at the initial questioning by Deputy Sand, is whether Sand's observation of the two cigarettes provided him with the probable cause necessary to search the interior of defendant's vehicle including the closed, brown paper bag. We note that such an inquiry is necessary because the closed, brown paper bag, although in ready view from where Deputy Sand stood outside defendant's vehicle, did not constitute, as Sand viewed it, contraband. *Cf. Arizona v. Hicks* (1987), 480 U.S. 321, 94 L. Ed. 2d 347, 107 S. Ct. 1149.

■ Sand testified, however, that he first observed two "factory type" cigarettes with filters, both of which had the nonfiltered end twisted or rolled. He further stated that he has had training in the recognition of illegal substances and has had occasion to observe marijuana cigarettes. Based on his training and experience, Sand stated that a marijuana cigarette is normally a hand-rolled cigarette with the two ends rolled or twisted. According to Sand, the two cigarettes on the console appeared to be marijuana cigarettes. Based on Sand's observation of the two cigarettes, and in light of his training and experience, he possessed the probable cause to believe that defendant possessed marijuana in his vehicle. (See *People v. Clark* (1989), 185 Ill. App. 3d 231, 239, 541 N.E.2d 199; see also *Gustafson v. Florida* (1973), 414 U.S. 260, 266, 38 L. Ed. 2d 456, 461-62, 94 S. Ct. 488, 492 (observation of rolled cigarettes by officer with training in identification of illegal substances justified seizure of cigarettes as evidence of crime); see generally 2 W. LaFave, Search & Seizure: §3.6(b), at 40-42 (2d ed. 1987).) Such probable cause gave Deputy Sand the basis further to search defendant's vehicle and those areas of the vehicle, including the brown paper bag, where it would be reasonable to find marijuana. (See *United States v. Ross* (1982), 456 U.S. 798, 825, 72 L. Ed. 2d 572, 594, 102 S. Ct. 2157, 2173; *People v. Smith* (1983), 95 Ill. 2d 412, 419-20, 447 N.E.2d 809; *People v. Clark* (1982), 92 Ill. 2d 96, 99-101, 440 N.E.2d 869.) Thus, we hold that the decision of the trial court quashing defendant's arrest and suppressing the evidence obtained as a result of Deputy Sand's search of defendant's vehicle was erroneous.

The judgment of the circuit court of Du Page County is reversed, and the cause is remanded.

Reversed and remanded.

UNVERZAGT, P.J., and INGLIS, J., concur.