THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CHRIS FROIO, Defendant-Appellee.

Second District   No. 2—89—0371

Opinion filed June 5, 1990.

118

Fred L. Foreman, State's Attorney, of Waukegan (Peter A. Speranza, Assistant State's Attorney, and William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Sherry R. Engelstad, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The defendant, Chris Froio, was charged in the circuit court of Kane County with the unlawful possession of (Ill. Rev. Stat. 1987, ch. 56½, par. 704(e)) and intent to deliver (Ill. Rev. Stat. 1987, ch. 56½, par. 705(e)) more than 500 grams of cannabis. The charges rose from the November 6, 1988, traffic stop which led to the discovery of the cannabis in the trunk of the defendant's automobile. The trial court granted the defendant's motion to suppress the evidence obtained as a result of the traffic stop, and the State now appeals.

At issue on appeal is the propriety of the trial court's findings that: (1) the search of the passenger compartment of the defendant's car was not justified to protect the safety of the police officers; and (2) the defendant did not consent to the search of the trunk of his car.

The following evidence was adduced at the hearing on the defendant's motion to suppress evidence. We note that, although all parties testifying at the hearing indicated that the following events took place on the evening of November 7, 1989, the complaints and information filed in this cause indicate that the actual date of these occurrences was November 6, 1989. This discrepancy is immaterial here.

Officer Edward Roncone, a patrolman with the Village of Lindenhurst, testified that he was on patrol alone in his squad car on the night in question. While traveling west on Grand Avenue, Officer Roncone noticed a vehicle swerve from its lane and cross the center line. Officer Roncone decided to stop the vehicle because of this traffic violation, and he activated the mars lights on his squad car. As he was

pulling the vehicle over to the side of the road, Officer Roncone flashed a spotlight through the car's rear window and noticed the driver reach down. After the two vehicles came to a stop, both the driver and Officer Roncone exited their automobiles and approached each other. Officer Roncone identified the defendant as the driver of the other automobile.

Officer Roncone testified that he and defendant stood near the rear end of the defendant's automobile. Officer Roncone asked to see the defendant's driver's license, and the defendant handed him a Lake County sheriff's citation. Officer Roncone then proceeded to walk past the defendant to the door of the defendant's automobile, which had been left open when the defendant exited the car. At this point, Officer Roncone observed a large knife wedged between the upper and lower driver's side seat cushions in the defendant's automobile, and he reached his arm into the vehicle and removed the knife. The officer testified that it was not illegal for the defendant to possess the knife. Officer Roncone then conducted a pat-down search of the defendant for any further weapons, but the defendant had none. Officer Roncone asked the defendant why he had the knife, and the defendant stated that he worked in a bad neighborhood in Chicago.

At this point, Officer Roy McNally, another Lindenhurst police officer who had been summoned by Officer Roncone, arrived at the scene. Officer Roncone asked Officer McNally to "keep an eye on" the defendant while Roncone entered the vehicle to search for any further weapons. Officer Roncone stated that, after he entered the defendant's vehicle, he detected a strong odor of unburnt cannabis which he had not been able to smell when standing outside the car. The officer then "looked down to where [the defendant] made the move on the initial action of the stop" and found a plastic Tupperware container covered with a white lid. Officer Roncone opened the plastic container and detected a green, leafy residue and strong odor of unburnt cannabis. Officer Roncone found no other weapons in the automobile.

Officer Roncone stated that he asked the defendant if he would object to opening the trunk of the automobile so the officers could look inside. According to Officer Roncone, the defendant stated that, although he had no objection, he did not have the key to the trunk. The officer asked the defendant if a key which was sitting on the front seat of the car was the key to the trunk, and the defendant said that it was. When asked again whether he would object to opening the trunk, the defendant did not object. The defendant then took the key and opened the trunk of the car. The officers present saw in the trunk a bag of cannabis in the spare tire. The defendant was placed

under arrest at this time.

Officer McNally also testified on behalf of the State. Officer McNally substantially corroborated Officer Roncone's version of events and indicated that the defendant had no objection to opening the trunk.

Testifying in support of the motion to suppress evidence, the defendant stated that he was told to open the trunk and that he did not feel he could refuse.

During argument on the motion, the State suggested that the police officer's search of the defendant's automobile was justified per the Supreme Court's decision in *Michigan v. Long* (1983), 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469. The trial court, stating that *Long* was factually distinguishable from the case at bar, disagreed. The court stated:

"In this case it seems to me we have a simple traffic violation. I mean the only reason that the officer said that he went back into the car was to search for weapons for his own safety and, quite frankly, I don't understand that. I think he had the right to give him a ticket and take him into custody if he couldn't post bail, or let him go. I don't think he had a right to go in the car the second time and I will grant the motion to suppress."

The trial court also found that the defendant did not voluntarily consent to the search of the trunk of the automobile. The State filed a certificate of impairment and now appeals from the order of suppression pursuant to Supreme Court Rule 640(a)(1) (107 Ill. 2d R. 604(a)(1)).

The stop and search of the defendant's automobile in the instant case involved five distinct components: (1) the initial stop for the traffic violation; (2) the removal of the knife which was spotted on the driver's seat; (3) the pat-down search of the defendant; (4) the search of the passenger compartment for weapons; and (5) the search of the trunk. The propriety of the first three components is not at issue. However, the State contends that the trial court erred when it concluded that the weapons search was not justified and that the defendant did not consent to the search of the trunk.

■ We note that, in reviewing the trial court's ruling on the defendant's motion to suppress evidence, the court's findings normally will not be disturbed on review unless they are manifestly erroneous. (*Village of Gurnee v. Gross* (1988), 174 Ill. App. 3d 66, 69.) However, where neither the facts nor the credibility of the witnesses is in dispute, the question is a legal one subject to *de novo* consideration on review. *People v. Graves* (1990), 196 Ill. App. 3d 273, 276.

■ In *Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889,

906, 88 S. Ct. 1868, 1880, the Supreme Court held that a police officer may make a valid investigatory stop, absent probable cause for an arrest, provided that the officer's decision is based on specific, articulable facts and reasonable inferences therefrom which warrant the investigative intrusion. Where the officer making a *Terry* stop reasonably believes, again based on specific, articulable facts, that his safety or the safety of others is in danger, the officer may also conduct a limited search of an individual to search for weapons. (*Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883.) The protective search may extend beyond the individual's person to the area within his immediate control from which he might gain access to a weapon. (*Michigan v. Long* (1983), 463 U.S. 1032, 1048, 77 L. Ed. 2d 1201, 1219, 103 S. Ct. 3469, 3480.) It is permissible for an officer making a *Terry* stop to search the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, so long as the officer possesses a reasonable belief, based on specific, articulable facts which, taken together with the rational inferences therefrom, warrant the belief that the suspect is dangerous and may gain immediate control of a weapon. *Long*, 463 U.S. at 1049, 77 L. Ed. 2d at 1219-20, 103 S. Ct. at 3481.

In the instant case, the trial court concluded that Officer Roncone failed to demonstrate a sufficient basis for his belief that the weapons search of the defendant's passenger compartment was necessary to protect the officers' safety. Since neither the facts nor the credibility of the witnesses is at issue in this portion of our inquiry, however, we may make a *de novo* determination of whether the circumstances of this case presented the police officers with sufficiently specific and articulable facts to support their decision to search the passenger compartment. (*Graves*, 196 Ill. App. 3d at 276.) We believe that the Supreme Court's decision in *Michigan v. Long* requires us to conclude that the officers were justified in conducting a search of the passenger compartment of the defendant's automobile to search for weapons.

■ The facts in *Long* are strikingly similar to those in the case at bar. Long, the defendant, was the driver of the automobile which swerved into a ditch. The police officers arriving at the scene met Long, who had exited his automobile and left its driver's side door open, at the rear of his car. Long was uncooperative with the police and soon began to walk back toward his car. At this point, the police officers noticed a knife in Long's automobile, so they frisked him and searched those areas of his car's passenger compartment which would be within his immediate control and in which a weapon could be hidden. The search produced a pouch which contained marijuana. (*Long*,

463 U.S. at 1035-36, 77 L. Ed. 2d at 1210-11, 103 S. Ct. at 3473-74.) The Supreme Court held that the police officers were in possession of specific, articulable facts which would justify a belief that Long was dangerous and that a limited search of the automobile was necessary to protect the officers' safety. (*Long*, 463 U.S. at 1050, 77 L. Ed. 2d at 1220-21, 103 S. Ct. at 3481.) Because these facts virtually mirror those in the instant case, we believe it is clear that the officers here were also possessed of specific, articulable facts which justified their belief that the defendant was potentially dangerous and that a limited search of the driver's area of the automobile was necessary to protect the officers' safety.

The trial court felt that *Long* was not controlling because of a number of dissimilarities between it and the instant case. The court noted that the defendant in *Long* was not cooperative with the police and was headed back toward his automobile when the officers decided to search his car. We do not find these differences to be significant. Just as was the case in *Long*, the police officer here saw a dangerous weapon on the seat of the defendant's automobile. Even if the defendant here was more cooperative than the defendant in *Long*, it is difficult to imagine a more specific and articulable basis for concluding that an individual may be dangerous than the open presence of a dangerous weapon in his automobile. Again, here, as in *Long*, the fact that it was legal to possess the knife does not detract from the officer's reasonable conclusion that the knife's owner was potentially dangerous. (See *Long*, 463 U.S. at 1052 n.16, 77 L. Ed. 2d at 1222 n.16, 103 S. Ct. at 3482 n.16.) In addition, here, unlike in *Long*, the officer saw the driver of the car reach down as the car was being pulled over; this kind of furtive gesture is a factor which supports the inference that there might have been other weapons in the car. See *People v. Poole* (1988), 167 Ill. App. 3d 7, 14.

Moreover, it is not particularly relevant whether the investigatory search for weapons is conducted before or after the driver begins to return to the car. Under circumstances such as those in the case at bar, "if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside." (*Long*, 463 U.S. at 1052, 77 L. Ed. 2d at 1221, 103 S. Ct. at 3482.) "Therefore, the balancing required by *Terry* clearly weighs in favor of allowing the police to conduct an area search of the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous." *Long*, 463 U.S. at 1051, 77 L. Ed. 2d at 1221, 103 S. Ct. at 3482.

■ Accordingly, we believe that the search of the vehicle's passenger compartment was reasonable under these circumstances. Since the search of the passenger compartment was valid, it would not be proper to suppress any contraband discovered during the search. (*Long*, 463 U.S. at 1050, 77 L. Ed. 2d at 1220, 103 S. Ct. at 3481.) Thus, it was improper for the trial court to suppress the plastic Tupperware bowl which contained cannabis residue.

The further search of the trunk, however, presents an entirely different question. The defendant was not arrested until after the trunk was opened, and the State concedes that the search of the trunk is not justified as an inventory search (see, *e.g.*, *People v. Moffitt* (1985), 138 Ill. App. 3d 106, 113). Instead, the State contends that the defendant consented to the search of the trunk. Unlike our prior inquiry, the testimony presented to the trial court on this point is in conflict. The facts are not, then, undisputed, and the trial court's ruling rests in part on its assessment of the witnessess' credibility. Therefore, the trial court's finding that the defendant did not consent to the search of the trunk will not be disturbed on appeal unless it is manifestly erroneous. *Graves*, 196 Ill. App. 3d at 276; *Gross*, 174 Ill. App. 3d at 69.

■ Consent to a search must be given voluntarily. Whether consent is voluntarily given must be determined from the totality of the circumstances. (*People v. Branham* (1985), 137 Ill. App. 3d 896, 900.) Consent is not voluntary if it is solely the product of acquiescence or submission to an assertion of lawful police authority. (*Branham*, 137 Ill. App. 3d at 901.) Here, the trial court was entitled to credit the defendant's testimony that the officers directed him to open the trunk and that he felt compelled to do so. We cannot say that the trial court's finding that the defendant did not voluntarily consent to the search of the trunk was manifestly erroneous. Therefore, the trial court properly suppressed the evidence which was found in the trunk.

The portion of the judgment of the circuit court of Lake County suppressing the evidence found in the search of the passenger compartment of the defendant's vehicle is reversed; the portion of the order suppressing the evidence found in the trunk of the car is affirmed.

Affirmed in part; reversed in part.

UNVERZAGT, P.J., and DUNN, J., concur.