THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD HARRIS, Defendant-Appellant.

Second District No. 2—89—0273

■

Opinion filed July 18, 1990.

■

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan, and John Thomas Moran, of Law Offices of John Thomas Moran, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Richard L. Harris, was convicted of burglary under section 19—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 19—1(a)). He appeals, contending the trial court erred by denying his motion to suppress evidence. The issue is whether the driver of defendant's car had authority to consent to the search of the car in which the proceeds of the burglary were discovered when defendant was present but kept silent.

At the hearing on defendant's motion, Officer Halley of the Highland Park police department testified that he was on duty at 3:54 a.m. on November 8, 1988. At that time, he was proceeding southbound on Route 41 in Lake County. He received a radio transmission that a burglary had just occurred at the Sensations clothing store at 599 Elm Street, which was two miles from his location. There were no cars on the highway at that time, but within two minutes, a yellow Cadillac entered the expressway and accelerated rapidly. Officer Halley positioned his squad car four lengths behind the Cadillac and followed it for 0.3 to 0.4 miles. The Cadillac maintained a speed of 63 miles per hour, but the speed limit was 50 miles per hour, so the officer stopped the Cadillac, which parked by the center median.

Officer Halley approached the car and observed two men in the front seat. The driver's side window was broken, and glass lay about the interior. Officer Halley identified the passenger as defendant and

the driver as Melvin Baker. Halley asked Baker for his driver's license, but Baker responded that he did not have it with him. Several times Halley asked the driver for his name, but Baker did not give an answer. Halley asked Baker where he was going. Baker responded that he was headed towards Wisconsin, became lost, took an overpass and started going southbound on the highway to get to Wisconsin. The Wisconsin border is north of Lake County, Illinois. Halley next asked Baker if it would be all right to look in the trunk of the car. According to Halley, Baker said that "it would be all right, but he did not have the keys to the vehicle as it was not his car." Halley asked Baker whose car it was, but Baker told him only that it belonged to a friend. Baker did not identify the passenger in the car. Officer Halley testified that Baker made these statements while standing outside the car while defendant remained seated in the passenger seat. Defendant said nothing during the entire conversation although he was only five feet away. Halley stood right outside the broken window.

Officer Coffee arrived on the scene and heard Officer Halley talking to the driver. Officer Coffee testified that Baker was seated in the driver's seat at the time and that Baker told Halley that he could look in the trunk but did not have the key. Coffee also testified defendant remained silent. Defendant and Baker were removed from the car and walked to Coffee's squad car. Officer Halley reached into the glove compartment and activated the trunk release. Numerous items of women's garments from the Sensations clothing store were in plain view once the trunk was open. Halley did not specifically ask permission to enter the glove compartment. After the State rested, defendant did not present any evidence.

The trial court made the following remarks when denying the motion to suppress evidence:

"The officer's testimony is uncontradicted that the car was speeding. I think that gives him a right to stop the car. I think when the driver fails to produce a license and doesn't identify himself—and really the question is the officer had no reason to suspect that.the owner was in the car. In fact he had every reason to expect that the owner was not in the car—

MR. KEEFE [Defense counsel]: But he made—

THE COURT:—because when the driver said well, you can open the trunk, but I don't have the keys because it's not my car, the officer could have reasonably, it seems to me, taken that to mean that the passenger didn't have the keys either. He didn't say, gee, I don't own the car, I don't have the keys, but here's the owner, he should have the keys. I think the stop was

based on probable cause. I think the driver of the car had the authority to consent to the search of the car.

I don't think there's an obligation on the part of the police officer to advise the driver that he could refuse the search as long as he didn't coerce the consent. I think he gave the consent to search the car and then applied the consent to reach in and press the button and open the trunk, and I'll deny the motion."

██ ■ Defendant contends that the search of the car was unreasonable because Baker did not have the authority to consent to the search and his statement was merely a polite refusal rather than an explicit agreement. Defendant does not contend the consent was coerced or involuntarily given. The State argues that the court's decision was not manifestly erroneous and that the stolen goods would have been discovered inevitably when the car was impounded. The State has not argued that the warrantless search of the car was permissible because the officers had probable cause to believe the car contained evidence. Probable cause exists when, considering the totality of circumstances known to the officer at the time of the search, a reasonable person would have believed evidence was inside. (*People v. Penny* (1989), 188 Ill. App. 3d 499, 502.) Stopping a car for a minor traffic violation does not by itself justify a search, and an officer's authority to investigate a traffic violation may not serve as a subterfuge to obtain other evidence based on mere suspicion. 188 Ill. App. 3d at 502.

██ ■ The trial court's ruling on a motion to suppress evidence will not be overturned unless it was manifestly erroneous. (*People v. Murray* (1990), 137 Ill. 2d 382, 386-87.) A person may consent to a search conducted without a search warrant, but in order for the consent to be considered a waiver of his fourth amendment rights, the State must prove by a preponderance of the evidence that the consent was voluntarily given. (*People v. Smith* (1984), 124 Ill. App. 3d 914, 919.) Where a search is justified on the ground of consent, the trial court's finding will not be disturbed on appeal unless it is manifestly erroneous. *People v. Froio* (1990), 198 Ill. App. 3d 116, 123.

██ The trial court found that Baker consented to the search and that he had authority to consent. We do not believe these findings to be manifestly erroneous. In addition, we do not believe that Baker's authority was negated by the owner of the car sitting silently in the passenger seat.

Defendant contends that Baker's response that it would be all right to look in the trunk but for the lack of keys was merely a polite

refusal, akin to: "I'd love to come to your Tupperware[TM] party, but I have a dental appointment for the same Sunday evening." Nevertheless, it was an approval of the police officer's request, and our law enforcement officers cannot take the role of arbitrators of etiquette. Although defendant's response was similar to those in *Froio* (198 Ill. App. 3d at 119-20) and *People v. Beroukas* (1981), 98 Ill. App. 3d 990, 992, in those cases, there was other evidence contradicting the officers' accounts of the conversation. The record contains an uncontradicted account of Baker's response, and the trial court could well have interpreted it as another evasive response whereby Baker sought to alleviate suspicion while hoping the officers did not know of the trunk release. Thus the trial court's finding that Baker consented to the search was not manifestly erroneous.

■■ ■ Baker also had authority to consent to the search of defendant's car. Any person who has access to or control of property for most purposes has authority to consent to a search of it. (*People v. Foskey* (1990), 136 Ill. 2d 66, 87; *People v. Bolden* (1987), 152 Ill. App. 3d 631, 635.) While it is obvious that Baker had apparent authority to consent to the search (see *United States v. Miller* (7th Cir. 1986), 800 F.2d 129, 133), we do not rely on that ground because Illinois courts have rejected the theory of apparent authority to consent to a search as being inconsistent with the rights of privacy and property (*People v. Miller* (1968), 40 Ill. 2d 154, 157; *People v. Vought* (1988), 174 Ill. App. 3d 563, 570). However, a third party may give legally sufficient consent for a search if he has actual authority over the property shared in common with the defendant. (*United States v. Matlock* (1974), 415 U.S. 164, 171, 39 L. Ed. 2d 242, 250, 94 S. Ct. 988, 993.) By allowing the driver to exercise authority over a vehicle, a defendant assumes the risk that the driver will allow someone to look inside it. *People v. Miller* (1975), 36 Ill. App. 3d 542, 549.

■ A driver of a car has the authority to consent to a search of that car because he is the person having immediate possession and control of the vehicle. (*United States v. Morales* (3d Cir. 1988), 861 F.2d 396, 399.) As the driver, he has joint access and control over the entire vehicle, including its trunk, glove compartment and other components. (861 F.2d at 399; 3 W. LaFave, Search & Seizure §8.6(a), at 316 (2d ed. 1987).) A nonowning driver, of course, is limited in his authority to those parts over which he has been given access, and not over other parts which he has been restricted from accessing. (3 W. LaFave, Search & Seizure §8.6(a), at 316 (2d ed. 1987) ("[i]f, for example, the owner hands over both the ignition key and the trunk key, then the bailee may consent to a search of the trunk"); *Morales*, 861

F.2d at 399 n.7 ("If, however, a driver's control is limited, in that he does not have a key or other means of access to the trunk or glove box, the scope of his authority to consent to search of those areas is similarly limited"); *Ledda v. State* (Del. 1989), 564 A.2d 1125, 1128 n.1 ("There is no evidence in the record that Morzella's control of the vehicle was limited in any way, such as the lack of a key, or other means of access to the trunk or glove compartment").) Although Baker said he did not have a key to the trunk, he had another means of access, namely, the trunk release, which was within easy reach; thus, he had access to and control of the trunk and could consent to the search of it.

██ Baker's consent was not negated by the presence of defendant in the car. Defendant, it is true, had the actual authority over the car, but he had the power to delegate common authority to Baker and to revoke it at any time. Defendant was silent during the conversation with Baker and never expressed his ownership interest or evidenced a revocation of Baker's common authority. Defendant was silent during the conversation with Baker, never expressed his ownership interest, and did not refuse the consent to the search. (*People v. Callaway* (1988), 167 Ill. App. 3d 872, 880.) Defendant was within hearing range of the conversation but did not object and cannot now argue the search was illegal because he did not consent. (*People v. Klein* (1983), 115 Ill. App. 3d 582, 587.) Such behavior is inconsistent with a contention that defendant retained an expectation of privacy. (*United States v. Anderson* (3d Cir. 1988), 859 F.2d 1171, 1177.) While there is some authority to suggest a driver cannot validly consent when the owner is present as a passenger (see *Morales*, 861 F.2d at 404 (Sloviter, J., dissenting) ("In *Matlock*, the Supreme Court specifically noted that the case involved admitting the fruits of the search 'against the *absent*, nonconsenting person,' 415 U.S. at 170, [39 L. Ed. 2d at 249,] 94 S. Ct. at 993"); 3 W. LaFave, Search & Seizure §8.6, at 27 (Supp. 1990)), we do not believe such presence to be determinative of whether the driver has consented, especially when the owner does not assert his rights (*Ledda*, 564 A.2d at 1128; see also *Klein*, 115 Ill. App. 3d at 587). While, as Justice Sloviter suggests, the driver's control and access to certain areas may be limited by the owner, *i.e.*, if there was a need to get into the trunk the owner could do it (*Morales*, 861 F.2d at 404), there was no evidence that defendant put any restrictions on Baker's control of the car.

██ The trial court's comments reveal that, using an objective standard, a reasonable person would not have believed the owner was in the car. The driver failed to produce a license, refused to identify

himself, said the car belonged to an unnamed friend rather than the passenger and said he did not have the key to the trunk; moreover the window was broken, indicating a possible stolen vehicle. While evenhanded law enforcement is best achieved by the application of objective standards rather than standards that depend upon the subjective state of the officer (*Horton v. California* (1990), 495 U.S. ____, ____, 110 L. Ed. 2d 112, 124, 110 S. Ct. 2301, 2308), the officers' reasonable belief pertains only to Baker's apparent authority rather than his actual authority. Nevertheless, the evidence adduced at the hearing supports the court's findings that Baker had actual authority to control the car, had access to the trunk and thus had actual authority to consent to the search of the trunk. The trial court did not err by denying the motion to suppress the evidence found in the trunk.

For the above reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

DUNN and McLAREN, JJ., concur.