STATE of Missouri, Respondent,

v.

Jeffrey L. ANDERSON, Appellant.

Nos. WD 44616, WD 46599.

Missouri Court of Appeals,
Western District.

Oct. 26, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 30, 1993.

Application to Transfer Denied
Jan. 25, 1994.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

Jeffrey Anderson appeals from his conviction for murder in the first degree, § 565.-020, RSMo Cum.Supp.1992, and armed criminal action, § 571.015, RSMo 1986, for which he was sentenced to concurrent terms of life imprisonment without probation or parole and twenty years imprisonment, respectively. Anderson also appeals the motion court's denial of his Rule 29.15 motion for postconviction relief. Anderson raises five points on appeal arguing that: 1) the trial court erred in overruling Anderson's motions for judgment of acquittal because the state's evidence was insufficient to support the jury's findings of guilt beyond a reasonable doubt; 2) the trial court erred in sustaining the state's objection to a portion of defense counsel's closing argument; 3) the motion court erred in denying Anderson's Rule 29.15 motion for postconviction relief because Anderson was denied his right to effective assistance of counsel; 4) the trial court erred in overruling Anderson's pro se motion to dismiss or replace counsel because it denied him his right to trial counsel free from conflicts of interest; and 5) the trial court erred in submitting Instruction No. 4, patterned after MAI–CR3d 302.04, because the definition of reasonable doubt violated Anderson's right to due process.

The conviction and the judgment on the postconviction motion are affirmed.

Anderson resided at 4216 Park in Kansas City, Missouri. Anderson had an agreement with Quan Gray by which Gray paid Anderson for allowing Gray and his associates, Terry Boydston and Anthony Goins, to sell drugs out of Anderson's house. Larry Humphrey was also involved in the operation and served as the doorman at the house.

On August 19, 1989 at approximately 9:30 a.m., Officer Robert Micca of the Kansas City Police Department received a call to investigate a possible homicide at Anderson's residence. When Officer Micca and his partner arrived at the scene, Anderson was not at home and the front door of the house was locked. The officers entered the house by climbing through an open window at the rear of the house. They found the dead body of Gray lying on a sofa in the living room of the house. Further investigation indicated that Gray had been shot in the head. There were also bullet entry and exit holes in the couch pillows and cushions, as well as a spent bullet under the couch, indicating that a bullet had also been fired into the couch.

The officers observed that the front pocket of Gray's pants was pulled out. A loaded .22 caliber handgun was recovered from under the sofa cushion beneath Gray's head. The officers also found 2.1 grams of crack cocaine in a sleeper sofa, marijuana in the hanging light fixture in the dining room and marijuana behind a large clock in the kitchen.

An autopsy on Gray revealed that he died as a result of two bullet wounds to the head. All three bullets were fired from a .357 or .38 caliber gun. Although it was determined that the bullet which killed Gray and the bullet retrieved from under the couch were from the same gun, the third bullet was too badly damaged to be tested.

The police could not locate Anderson after discovering Gray's body. Officer Rick Pilgrim contacted Anderson's relatives in Texas concerning Anderson's whereabouts. A short time later, Anderson contacted Officer Pilgrim to turn himself in. Officer Pilgrim traveled to Texas to interview Anderson. After having been advised of his *Miranda* rights, Anderson told Officer Pilgrim that he had stolen Gray's car and taken $150 from Gray's pocket as Gray slept in a back bedroom of Anderson's house. Anderson told Pilgrim that he left for Texas before daybreak on August 19, 1989.

Anderson was indicted on one count of first degree murder and one count of armed criminal action. A jury trial was held. The testimony of several of Anderson's neighbors was presented at trial. Marilyn Handy testified that in the early morning hours of August 19, 1989, she had her neighbor drive her to Anderson's house to buy crack cocaine from Gray. Handy arrived at Anderson's house about 1:45 a.m. and Gray's car was parked across the street from the house at that time. When Handy approached the

house, Anderson opened the front door slightly and said, "Ain't nobody here, nothing is happening, babe." When Handy kept walking toward the house, Anderson told her again that no one was there. Handy left, drove around for a little while and then went to her mother's residence, which was four or five houses away from Anderson's house, sometime between 2:00 and 2:30 a.m. She noticed that Gray's car was gone and that Humphrey was standing on the sidewalk in front of her mother's home. Handy went out to talk to Humphrey and they were "together off and on all night." Handy testified that Humphrey had fifteen to twenty bags of $20 cocaine in his possession.

Brenda Morris, a neighbor who lived next door to Anderson at 4220 Park, heard three consecutive gunshots at Anderson's house between 2:00 and 2:30 a.m. Morris went out on her porch and noticed that Gray's car was not parked outside Anderson's house. Morris went to a neighbor's house to use the telephone but the neighbor refused to open the door. Morris then went to Anderson's house where she heard a sound like snoring but no one answered the door.[1] Morris sat on her porch until 4:00 a.m. but did not see any activity at Anderson's house.

Daniel Jones, a neighbor who lived at 4224 Park, testified that he had seen Gray and Anderson fighting on the front porch of Anderson's house a couple of days prior to the shooting. Gray punched Anderson, who moves slowly and walks with a cane, knocked him down and kicked him several times. Jones testified that the next day, Anderson came to Jones' house to make a collect telephone call to Texas. Anderson told the person he called in Texas that he would "probably be down there in a day or two." After the telephone call, Anderson told Jones that he was tired of the other men living in his house and that he wanted to get them out of his house. Anderson told Jones he was ready to kill Gray. Jones also testified that, on the morning of the shooting at about 2:30 a.m., he saw Anderson talking to Humphrey on the sidewalk.

At trial, the prosecution also presented the testimony of Craig Holmes who was incarcerated with Anderson in the Jackson County Jail on November 20, 1989. Holmes knew Anderson because he had previously paid Anderson to allow him to sell drugs out of Anderson's house. Holmes testified that Anderson told him that he had taken Gray's money, his car and his drugs and gone to Texas. Holmes stated that Anderson told him that he "hit the boy one time in his head" which Holmes testified meant that Anderson had "killed the boy."

The jury returned verdicts of guilty and Anderson was sentenced to life imprisonment on the murder conviction and twenty years imprisonment on the armed criminal action conviction, with the sentences to run concurrently. Anderson filed a pro se Rule 29.15 postconviction motion. After postconviction counsel was appointed, an amended motion was filed. An evidentiary hearing was held and the court denied Anderson's motion. Thereafter, this appeal was timely filed.

In his Point I, Anderson claims that the trial court erred in overruling his motions for judgment of acquittal at the close of the state's evidence and at the close of all the evidence because the evidence was insufficient to support a finding of guilt beyond a reasonable doubt. Anderson specifically asserts that the evidence was purely circumstantial and that it failed to refute the reasonable hypothesis of innocence that Gray was shot and killed by someone other than Anderson.

The elements of murder in the first degree are that the accused (1) knowingly (2) causes the death of another person (3) after deliberation upon the matter. Section 565.020.1, RSMo Cum.Supp.1992. A person commits the offense of armed criminal action if the person commits a felony "by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." Section 571.015.1, RSMo 1986. Anderson concedes that Gray was murdered by a deadly weapon, but challenges the state's proof of

---

**1.** A pathologist testified it was possible for Gray to have made snoring noises for up to one hour after he had been shot.

his participation in the commission of the crime.

■ Anderson argues that the state's case against him consisted solely of circumstantial evidence and, as a result, his conviction cannot be affirmed under the standard set forth in *State v. Pritchett,* 327 Mo. 1143, 39 S.W.2d 794, 796–97 (1931), unless the facts and circumstances relied upon to establish his guilt are consistent with each other and with the hypothesis of his guilt, and are inconsistent with his innocence and exclude every reasonable hypothesis of innocence.

■ Anderson's argument is without merit. Anderson's confession to Craig Holmes that he "hit the boy one time in the head" and that the boy was dead, was direct evidence that he shot Gray. *State v. Mallett,* 732 S.W.2d 527, 536 (Mo. banc), *cert. denied,* 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987). In addition, in *State v. Grim,* 854 S.W.2d 403, 408 (Mo. banc 1993), the Supreme Court of Missouri rejected the circumstantial evidence rule as stated in *Pritchett.* The Court applied to circumstantial evidence cases the existing standard utilized in direct evidence cases for review of sufficiency of the evidence as set forth in *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). Under the *Dulany* standard, the court considers all evidence, whether circumstantial or direct, and all favorable inferences that can be drawn therefrom, in the light most favorable to the conviction, and rejects all contrary evidence and inferences. *Id.*

In this case, a reasonable juror could find beyond a reasonable doubt that Anderson was guilty of murder in the first degree and armed criminal action. Anderson had a motive to murder Gray in that Gray had hit and knocked Anderson down and then kicked him several times a couple of days before Gray's murder. Anderson was tired of Gray and the others selling drugs in his house and had stated that he was ready to kill Gray. Anderson was known to be present inside his house right before the murder and outside his house right after the murder. Anderson took Gray's money, drugs and car and left for Texas in the early morning hours the day the murder occurred. The fact that Anderson made arrangements to go to Texas

two days before the murder and that his method of transportation to Texas was Gray's car evidenced deliberation. Anderson confessed to a fellow inmate that he stole from Gray and killed Gray by shooting him while Gray lay on the couch.

The evidence in this case was sufficient to support the conclusion that Anderson knowingly shot and killed Gray after deliberation upon the matter and that the murder was committed with a deadly weapon and, thus, was sufficient to support Anderson's convictions of murder in the first degree and armed criminal action. Point I is denied.

■ In Point II, Anderson argues that the trial court erred in sustaining the state's objection to defense counsel's argument that the jury could draw an adverse inference from the absence of Boydston and Humphrey as witnesses for the state. Anderson's defense at trial was that Boydston and Humphrey had a motive and the opportunity to murder Gray. In support of this defense, Anderson presented evidence that on the morning after the murder Boydston's fingerprint was found on the sill of the open window at Anderson's house. Anderson attempted to argue the adverse inference from the state's failure to call Boydston in support of his defense that either one could have committed Gray's murder. Anderson argues that Boydston and Humphrey were both associates of Gray so that they were "peculiarly available" to be called by the state as witnesses.

Defense counsel stated during closing argument: "Where is Mr. Boydston? Has he testified? Why hasn't he told you what he knows about it?" The state objected on the basis that defense counsel was "arguing the adverse inference of Mr. Boydston not testifying." The trial court sustained the objection.

The record discloses that defense counsel's argument to the jury related only to Boydston's absence as a witness. Defense counsel did not refer during closing arguments to the absence of Humphrey as a witness and, thus, this court will address Anderson's claim only as to Boydston.

A trial court has considerable discretion in allowing or rejecting the arguments of counsel and its rulings will not be reversed unless the court abuses its discretion. *State v. Baker*, 741 S.W.2d 63, 66 (Mo. App.1987). If a witness is equally available to both parties or unavailable to either party, the trial court should not permit counsel to argue to the jury during closing argument that an adverse inference arises from the state's failure to call the witness. *State v. Allen*, 829 S.W.2d 524, 528 (Mo.App.1992). Only when the missing witness is "peculiarly available" to one party should the court consider whether the party's failure to call the witness supports the inference that the witness could have testified adversely to that party if called. *Baker*, 741 S.W.2d at 66. "Equally available" means more than merely being susceptible to service of process and is determined by consideration of the following three factors: (1) one party's superior ability to know or identify the witness; (2) the nature of the testimony expected to be given by the witness; and (3) a relationship between a party and the witness which indicates a likelihood that the witness would testify more favorably for one party than the other. *State v. Webster*, 659 S.W.2d 286, 288–89 (Mo.App.1983).

In the instant case, Anderson, rather than the state, had the superior ability to know and identify Boydston because Anderson knew him personally and had a business relationship with Boydston. There is no evidence indicating that Boydston's testimony would have been unfavorable to the state and favorable to Anderson. Boydston was a known drug dealer who was unlikely to view the state more favorably than Anderson who allowed Boydston to sell drugs from his home. Evaluation of the three factors set forth in *Webster* indicates that Boydston was equally available to both parties. The trial court was correct in refusing to allow defense counsel to argue that the jury should draw an adverse inference from the absence of Boydston as a witness. *Allen*, 829 S.W.2d at 528. Point II is denied.

Anderson argues in Point III, that the motion court erred in denying his Rule 29.15 postconviction motion because he was denied his right to effective assistance of counsel by counsel's failure to exercise the customary skill and diligence that a reasonably competent attorney would exercise under the same or similar circumstances. Anderson alleges that he was prejudiced because his trial counsel failed to correctly advise him about the admissibility of his prior murder conviction to impeach his testimony at trial. Anderson's prior murder conviction was reversed on appeal and resulted in acquittal after retrial.

Upon review of the denial of a Rule 29.15 motion, this court is limited to a consideration of whether the findings and conclusions of the trial court are clearly erroneous. *State v. Ervin*, 835 S.W.2d 905, 928 (Mo. banc 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). After reviewing the entire record, the motion court's findings and conclusions will only be determined to be clearly erroneous if this court is left with the definite and firm impression that a mistake has been made. *Id.*

In establishing a claim for ineffective assistance of counsel, the movant bears a heavy burden and must overcome the presumption of the court that counsel is competent. *Amrine v. State*, 785 S.W.2d 531, 534 (Mo. banc), *cert. denied*, 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990). The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), set forth the following two-prong test for evaluating claims of ineffective assistance of counsel: 1) defendant must prove that his or her attorney failed to exercise the skill and diligence that a reasonably competent attorney would have exercised in a similar situation; and 2) defendant must show that the attorney's failure to act in a reasonably competent manner prejudiced the defendant. The defendant must satisfy both prongs of the *Strickland* test to prevail. *Amrine*, 785 S.W.2d at 534.

Anderson claims that his trial counsel never told him that the murder conviction would not be admissible for impeachment purposes and that he first became aware of such from the trial judge at sentencing. Anderson claims that he told his trial counsel that the

conviction was reversed on appeal and he was acquitted upon retrial. Anderson contends that because he was misinformed as to the admissibility of this conviction, he was unable to make a meaningful decision about whether to testify on his own behalf.

Anderson testified at the evidentiary hearing on his Rule 29.15 motion that his trial counsel advised him before trial that if he testified, the prosecution could impeach his testimony with any prior convictions. Anderson claims that he was prejudiced by trial counsel's allegedly erroneous advice because he would have testified had he known that the murder charge could not have been used to impeach his credibility. Anderson asserts that he would have testified that the argument he had with Gray on the porch of his house took place three weeks before Gray's death, that he and Gray had reconciled their differences by the time Gray was killed, that Gray was alive and sleeping in the back bedroom when he left the house, that he took $40.00 rather than $150.00 and that he took it from Gray's coat pocket not from his front pants pocket, that Holmes lied about his statements in jail and that he did not tell Jones that he was ready to kill someone. Anderson claims that because the state's case was entirely circumstantial, a reasonable probability exists that the result of the trial would have been different had he testified at trial.

█ It is unnecessary for this court to address the prejudice prong of the *Strickland* test because Anderson has failed to establish that his trial counsel acted in a professionally unreasonable manner in violation of the performance prong of the test. Trial counsel testified during the evidentiary hearing on Anderson's Rule 29.15 motion that he properly advised Anderson that the prior murder conviction which was reversed could not have been used by the prosecuting attorney on cross-examination to impeach Anderson's testimony. Trial counsel also testified that it was his opinion from the beginning of his representation of Anderson that Anderson should not testify. Trial counsel stated that this opinion was based somewhat upon the fact that Anderson had three prior convictions, in addition to the murder

conviction for which he was acquitted, but also upon other factors such as his assessment of the evidence in the case and his personal knowledge of Anderson in regard to what Anderson might say if he testified and what effect Anderson's demeanor would have on the jury. The motion court specifically found that Anderson's testimony was not credible. The motion court is not required to believe the movant's testimony and an appellate court must grant deference to the motion court's superior opportunity to assess the credibility of the witnesses. *State v. Dunmore*, 822 S.W.2d 509, 512 (Mo.App. 1991).

The record shows that Anderson, prior to the close of the case, was examined by his counsel in open court as to whether he wanted to testify. The trial judge explained that his prior convictions would be admissible for the purpose of impeaching Anderson's credibility but not as evidence of propensity to commit the crime. Anderson has not proved that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney in advising Anderson not to testify. Trial counsel's advice was reasonable. Point III is denied.

█ Anderson argues in Point IV that the trial court erred in overruling his pro se motion to dismiss or replace counsel without a hearing. Anderson alleges he was denied his right to trial counsel free from conflicts of interest because trial counsel attempted to convince Anderson to enter a plea of guilty to a lesser charge. Anderson contends that trial counsel's attempt to persuade him to enter a guilty plea resulted in Anderson and trial counsel having conflicting interests concerning Anderson's case.

█ A movant must satisfy both prongs of the following modified version of the two-part *Strickland* test to prove a denial of the right to effective assistance of counsel on conflict of interest grounds: 1) counsel actively represented conflicting interests; and 2) the actual conflict of interest adversely affected counsel's representation of movant. *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067; *Amrine*, 785 S.W.2d at 535. To establish an actual conflict of interest, movant bears the

burden of demonstrating that counsel did something or failed to do something which was detrimental to movant's interests and advantageous to the person whose interests conflict with movant's interests. *Yoakum v. State,* 849 S.W.2d 685, 689 (Mo.App.1993).

It is unnecessary for this court to address the second prong of the *Strickland* test because Anderson has not proved that counsel actively represented conflicting interests. In attempting to convince Anderson to plead guilty to a lesser charge, trial counsel was representing Anderson's interests and providing Anderson with his professional opinion that he would fare better by pleading guilty rather than going to trial on the charges against him. Anderson has not established that trial counsel did something or failed to do something which was detrimental to Anderson and advantageous to the person whose interests conflict with Anderson's interests. Anderson is arguing that trial counsel's interests conflict with his own interests but he has not established that trial counsel, in recommending that Anderson plead guilty, was motivated by the desire to gain an advantage for his own interests. Anderson has not proved that his plea of guilty would have been advantageous to the interests of trial counsel in any way. By failing to prove that a conflict of interest existed with his trial counsel, Anderson has also failed to prove that the trial court erred in overruling his motion to dismiss or replace counsel. Point IV is denied.

In Point V, Anderson argues that the trial court plainly erred in submitting Instruction No. 4, patterned after MAI–CR3d 302.04, because it incorrectly defines reasonable doubt. Anderson alleges that the instruction violated his right to due process of law because the instruction, in defining "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt," allowed the jury to find him guilty based on a quantum of proof below that required by due process. Counsel did not object to Instruction No. 4 at trial and, thus, the instruction can only be reviewed for plain error.

Anderson argues that the Missouri definition of "reasonable doubt" in MAI–CR3d

302.04 is at least as egregious as the terms found unconstitutional in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The instruction at issue in *Cage* was invalidated because the definition of "reasonable doubt" could have been interpreted by a reasonable juror as allowing a finding of guilt based on a degree of proof below that required by the Due Process Clause. *Id.,* 498 U.S. at 42, 111 S.Ct. at 330, 112 L.Ed.2d at 342. The "reasonable juror" standard of review used in *Cage* was superseded in *Estelle v. McGuire,* —— U.S. ——, ——, 112 S.Ct. 475, 482 n. 4, 116 L.Ed.2d 385, 399 n. 4 (1991), by the "reasonable likelihood" standard set forth in *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316, 329 (1990), which examines "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."

Anderson does not argue the *Estelle* standard on appeal, nor does he advance any theory other than that set forth in *Cage.* The Missouri Supreme Court has repeatedly rejected the argument Anderson asserts as to MAI–CR3d 302.04. *See State v. Griffin,* 848 S.W.2d 464, 469 (Mo. banc 1993); *Ervin,* 835 S.W.2d at 924; *State v. Blankenship,* 830 S.W.2d 1, 13 (Mo. banc 1992); *State v. Twenter,* 818 S.W.2d 628, 634 (Mo. banc 1991). This court is required to follow the last controlling decision of the Missouri Supreme Court. *State v. Weems,* 800 S.W.2d 54, 58 (Mo.App.1990). Point V is denied.

The conviction and the judgment on the postconviction motion are affirmed.

All concur.