**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Donald Dean LATHAM, Defendant and Appellant.**

**No. 18390.**

Supreme Court of South Dakota.

Considered on Briefs on March 23, 1994.

Decided July 6, 1994.

Mark Barnett, Atty. Gen., Patricia J. Froning, Asst. Atty. Gen., for appellee.

Drake A. Titze, Sioux Falls, for appellant.

MILLER, Chief Justice.

Donald Dean Latham appeals his judgment of conviction for aggravated assault. We affirm.

## FACTS

On January 15, 1992, Latham and his roommate Dennis Walker had an argument over a mess Walker created in their apart-

ment. Walker admitted at trial that he had been drinking that evening. Latham testified that Walker was drunk. The argument developed into a physical confrontation. Latham attempted to force Walker out of the house with an unloaded twelve-gauge shotgun. Walker took the shotgun from Latham and broke the stock by slamming it on the floor. Walker gathered some of his belongings and took them to his car. Latham locked the door behind him. Walker returned. At this point, Latham's version of the events differs from Walker's version.

Latham testified that Walker kicked in the back door. Latham went and got a twenty-gauge shotgun and loaded it while Walker was kicking at the door. Latham met Walker at the door, informed him that the shotgun was loaded, and ordered him to leave. Walker turned to leave. While holding the shotgun in his left hand, pointed at the ground, Latham reached to close the door with his right hand. Latham testified that Walker kicked the door, the door hit the barrel of the gun, and the gun discharged through the bottom of the door.

Walker testified that he never tried to break down the door. He testified that he returned from his car to get more of his belongings and met Latham at the door. Latham had the shotgun up to his shoulder and was pointing it at Walker.

Although there was a dispute over how the events unfolded, it is undisputed that the shotgun somehow discharged and Walker was hit in the foot by several pellets. The next day Walker went to the hospital because of pain in his foot. Emergency room personnel treated the minor gunshot wound and notified the police. Police began investigating the incident and questioned Walker. He initially fabricated a story about a gun accidently discharging while he was cleaning it, but ultimately admitted he had been shot by Latham.

The police officers then arrested Latham. Latham cooperated with the officers by answering their questions and allowing them to search the apartment without a warrant. He

produced the shotguns and the spent shotgun shell.

On February 11, 1993, a grand jury returned an indictment charging Latham with alternative counts of aggravated assault under SDCL 22–18–1.1(2) and SDCL 22–18–1.1(5) (both statutes are quoted below). The aggravated assault charges were tried before a jury in late April 1993. The jury found Latham guilty of the SDCL 22–18–1.1(5) charge and not guilty of the SDCL 22–18–1.1(2) charge. State also filed an habitual offender information. After the jury found him guilty of aggravated assault, Latham pleaded guilty to the habitual offender information. Circuit Judge William Srstka sentenced Latham to an indeterminate sentence of two to six years in the penitentiary.[1] Latham appeals the judgment of conviction for aggravated assault.

ISSUES

WHETHER THE TRIAL COURT ERRED IN REFUSING ADMISSION OF *CERTAIN* EVIDENCE RELATING TO WALKER'S CHARACTER AND REPUTATION FOR VIOLENCE.

Latham argues that his defense was "shackled" because the trial court excluded certain evidence concerning Walker's character and reputation for violence. Latham claims this character evidence was necessary to prove self defense and to attack Walker's credibility. Latham proposes a long list of items he "stood ready to show" to prove to the jury that Walker was a violent person. In fact, the trial court allowed Latham to introduce evidence relating to all of those items, except two. The only two matters the trial court prevented Latham from inquiring about were: (1) that Walker was on parole at the time of the altercation; and, (2) a specific prior act done by Walker while intoxicated.

Latham wanted the jury to hear that Walker was on parole and was not supposed to be drinking. Latham claimed he wanted this evidence to establish Walker's motive for initially lying to the police about how he was wounded. The trial court allowed Latham to

---

**1.** The Board of Pardons and Paroles subsequently set the sentence at three years. *See* SDCL 23A–27–37.

attack Walker's credibility by showing the jury (through testimony from Walker and the police officers) that Walker initially lied to the police. However, the trial court ruled that Walker's motive for lying was not relevant to the issues in the case. *See State v. Woodfork*, 454 N.W.2d 332 (S.D.1990) (victim's motive for theft of condoms was irrelevant in rape case). We agree that Walker's motive for lying was not relevant. Thus, the trial court did not abuse its discretion by refusing to allow Latham to elicit testimony that Walker was on parole at the time of the incident. *State v. Bartlett*, 411 N.W.2d 411, 414 (S.D.1987).

■ Latham wanted to show that Walker was violent when he became intoxicated. The general rule is that evidence of a person's character is not admissible to show that he acted in conformity therewith on a particular occasion. SDCL 19–12–4. *State v. Helling*, 391 N.W.2d 648 (S.D.1986). However, SDCL 19–12–4(2) allows that an accused may offer evidence of a pertinent trait of character of the victim in order to prove that he acted in conformity therewith on a particular occasion. Generally, this "pertinent trait of character" is proven by testimony as to the victim's reputation. SDCL 19–12–6. *See State v. Muetze*, 368 N.W.2d 575 (S.D. 1985). Thus, Latham was allowed to testify that Walker was violent when intoxicated. Davida Donelan, a former girlfriend of Walker, was allowed to testify that Walker had a reputation for violence when he was drunk.

Latham wanted Dorinda to testify about a specific incident where Walker threatened to kick in her door. The trial court, relying on *State v. Padgett*, 291 N.W.2d 796 (S.D.1980), ruled that evidence of specific acts of violence was not admissible.

■ Latham was claiming self defense. In order for him to prevail, the jury had to believe that he acted in response to a reasonable fear that Walker was going to harm him. *See State v. Burtzlaff*, 493 N.W.2d 1 (S.D. 1992).

SDCL 19–12–7 provides:

2. Trial courts may still guide and oversee the presentation of evidence through SDCL 19–12–3, which provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed

In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

Under SDCL 19–12–7, specific instances of conduct relating to Walker's violent nature when intoxicated were admissible to establish the reasonableness of Latham's fear.[2] To the extent that *Padgett* is in conflict with SDCL 19–12–7, we hold that SDCL 19–12–7 is controlling.

■ Latham was entitled to present appropriate evidence relating to specific instances of conduct in support of his claim of self defense. Latham needed to show that his fear of Walker was reasonable. However, only specific instances of conduct known to Latham at the time of the incident in question were relevant. *State v. Dokken*, 385 N.W.2d 493, 501 (S.D.1986).

■ Although the trial court erred in ruling that Latham could not present specific instances of Walker's conduct, Latham has not put forth any such evidence which would have been admissible. The record does not show that Latham was aware of the specific incident between Donelan and Walker. Latham was allowed to introduce other significant evidence about Walker's violent character. The jury was not persuaded by Latham's argument. We believe that based on the evidence in this record, testimony about one specific act of violence would not have changed the jury's decision. *State v. Schuster*, 502 N.W.2d 565 (S.D.1993). Although the trial court erred, the error was harmless. SDCL 23A–44–14. *State v. Davi*, 504 N.W.2d 844 (S.D.1993).

## WHETHER THE TRIAL COURT ERRED IN REFUSING LATHAM'S PROPOSED JURY INSTRUCTIONS.

Latham was charged with aggravated assault under SDCL 22–18–1.1 (subsections 2 and 5), which provides:

by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Any person who:

\* \* \* \* \* \*

(2) Attempts to cause, or knowingly causes, bodily injury to another with a dangerous weapon;

\* \* \* \* \* \*

(5) Attempts by physical menace with a deadly weapon to put another in fear of imminent serious bodily harm;

is guilty of aggravated assault. Aggravated assault is a Class 3 felony.

Latham requested jury instructions for two crimes he argued were lesser included offenses of aggravated assault. Specifically, Latham wanted instructions based on SDCL 22–18–1 (subsections 2 and 3), which provides:

Any person who:

\* \* \* \* \* \*

(2) Recklessly causes bodily injury to another;

(3) Negligently causes bodily injury to another with a dangerous weapon;

\* \* \* \* \* \*

is guilty of simple assault. Simple assault is a Class 1 misdemeanor.

The trial court concluded that neither version of simple assault constituted a lesser included offense of either aggravated assault charge.

### LESSER INCLUDED OFFENSE INSTRUCTIONS

■ To decide whether a trial court should submit a lesser included offense instruction to the jury, two tests must be satisfied—a legal test and a factual test. *State v. Tapio,* 459 N.W.2d 406, 408 (S.D.1990) (citing *State v. Gillespie,* 445 N.W.2d 661 (S.D.1989); *State v. Scholten,* 445 N.W.2d 30 (S.D.1989)). The legal test for lesser included offenses requires:

(1) all of the elements of the included offense are lesser in number than the elements of the greater offense;

(2) the penalty for the included lesser offense must be less than that of the greater offense; and

(3) both offenses must contain common elements so that the greater offense cannot be committed without also committing the lesser offense.

*State v. Wall,* 481 N.W.2d 259, 264 (S.D. 1992).

■ Both simple assault provisions require actual bodily injury. SDCL 22–18–1.1(5) only requires fear of bodily harm. Consequently one can violate SDCL 22–18–1.1(5) without necessarily committing either of the simple assaults in question. Thus, neither version of simple assault offenses in question is a lesser included offense of SDCL 22–18–1.1(5).

■ Similarly, neither version of the simple assault offenses in question is a lesser included offense of SDCL 22–18–1.1(2). One type of simple assault requires "negligent causation" while the second type of simple assault requires "reckless causation." Aggravated assault under 22–18–1.1(2) requires "attempted causation" or "knowing causation." If one "knowingly caused" something, they did not "negligently cause" or "recklessly cause" it. *See generally,* 1 Wharton's Criminal Law § 27 (15 ed. 1993) and Robinson, 1 Criminal Law Defenses § 61(a) (1984). Thus, one may commit aggravated assault under SDCL 22–18–1.1(3) without *necessarily* committing either of the simple assaults in question.

The legal test for lesser included offenses was not satisfied in this case and thus the trial court was correct in concluding that it was not required to give the lesser included offense instructions.

### SPECIFIC INTENT INSTRUCTIONS

■ Latham notes that under SDCL 22–18–1.1(2), a person is guilty of· aggravated assault if he "attempts to cause or knowingly causes" bodily injury to another with a dangerous weapon. Latham requested a jury instruction explaining the difference between specific intent and general intent. The trial court held that SDCL 22–18–1.1(2) contains no intent requirement and refused both requested instructions.

In *State v. Barrientos,* 444 N.W.2d 374 (S.D.1989), we held that aggravated assault

under SDCL 22–18–1.1(2) is a general intent crime. Based on *Barrientos,* the trial court was correct in holding that Latham was not entitled to any instructions distinguishing specific and general intent.

### *FAILURE TO USE PATTERN JURY INSTRUCTIONS*

 The trial judge refused to use the pattern criminal jury instructions. Instead, the trial judge explained that he preferred to draft his own instructions, to make them more readable for the jury. Latham claims the trial court is mandated to use the criminal pattern jury instructions, but Latham has provided no authority to support that contention.[3] While this Court has approved the use of pattern instructions, *State v. Christopherson,* 482 N.W.2d 298 (S.D.1982); *State v. Andrews,* 393 N.W.2d 76 (S.D.1986), we have not *required* that trial courts use the pattern jury instructions.[4] Rather, all that is required is that jury instructions, read as a whole, correctly state the law and inform the jury. *Schuster,* 502 N.W.2d at 568; *State v. Oster,* 495 N.W.2d 305 (S.D.1993); *State v. Johnston,* 478 N.W.2d 281 (S.D.1991). Latham has not shown or even argued that the jury instructions, when read as a whole, incorrectly stated the law or misinformed the jury.

We affirm the trial court in all respects.

MILLER, C.J., and HENDERSON, SABERS and AMUNDSON, JJ., concur.

SABERS, J., concurs specially.

SABERS, Justice (concurring specially).

I agree that it was not error to refuse to give the proposed lesser included jury instructions because the legal test was not met. Additionally, the trial court did not abuse its discretion under these circumstances. *State v. Marshall,* 495 N.W.2d 87 (S.D.1993); *State*

*v. Black,* 494 N.W.2d 377 (S.D.1993), *aff'd on reh'g,* 506 N.W.2d 738 (1993); *State v. Cook,* 319 N.W.2d 809 (S.D.1982).

---

3. The only authority cited by Latham is an American Law Report article which addresses the failure to use pattern jury instructions in States where their use is *mandatory*. *See,* Perovich, Construction of Statutes or Rules Making Mandatory the Use of Pattern or Uniform Approved Jury Instructions, 49 A.L.R.3d 128 (1973).

4. While we have not mandated the use of pattern jury instructions, we pause to note the pitfalls of not using them. Those instructions have been carefully researched and drafted to accurately reflect the law. Any significant departure from those approved jury instructions resulting in a misstatement of the law could create reversible error.