**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Brendan A. McGARRETT, Defendant and Appellant.**

No. 18754.

Supreme Court of South Dakota.

Considered on Briefs March 21, 1995.

Decided Aug. 2, 1995.

Mark Barnett, Atty. Gen., Frank E. Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Terry Pechota of Viken, Viken, Pechota, Leach & Dewell, Rapid City, for defendant and appellant.

AMUNDSON, Justice.

Brendan McGarrett (McGarrett) appeals his convictions for first-degree robbery (SDCL 22–30–1), commission of a felony while armed (SDCL 22–14–12), and aggravated assault (SDCL 22–18–1.1(5)). We affirm.

FACTS

On or around August 20, 1993, McGarrett and his traveling companion, Robert Surrell (Surrell), left Massachusetts enroute to California. Along their journey, they decided to stop in Rapid City, South Dakota, to visit the Badlands and Mount Rushmore. The two were driving a black 1984 Dodge Daytona.

At approximately 9:45 p.m., on August 23, 1993, a masked gunman robbed Big John's Liquor Store in Rapid City, holding the clerk and two patrons at gunpoint. The two customers, Monica Ulmer (Ulmer) and Desiree

Baxter (Baxter), described the robber as wearing a red Union Bay sweatshirt, green sweatpants and a white-hooded mask. No scent of alcohol was detected by either of these witnesses, although Ulmer stated the man's actions were slow. The next day, Ulmer and Baxter were shown a picture of Surrell, McGarrett's companion, but rejected him as the robber because they said he was too heavy to be the perpetrator.

At approximately 11:30 p.m. on the night of the robbery, in a seemingly unrelated event, police were summoned to the Outer Limits Bar in Rapid City. There was a complaint that windows had been broken out of several vehicles in the parking lot. Upon arriving at the scene, the manager of the bar pointed to McGarrett, who was sitting in the Dodge Daytona, and indicated to Officer Stafford (Stafford) that he suspected McGarrett in the wrongdoing. Stafford approached McGarrett and, while speaking with him, noticed a metal pipe in the vehicle. Stafford asked if he could search the vehicle. McGarrett consented, stating "go ahead," the car was not his, but "a friend's." Stafford reconfirmed McGarrett's consent a second time, then conducted the search.

McGarrett was arrested for felony damage to private property. A .22–caliber long-barrel pistol was recovered from the vehicle, and the car was impounded. On the way to the police station, McGarrett became ill and vomited a $50 bill. The next day, August 24, 1993, Bruce Evans (Evans) contacted Surrell, who McGarrett claimed to be the vehicle's true owner. Surrell gave consent for a second search of the car which was being housed at the police impoundment lot. Evans found a mask, sweatshirt and sweatpants fitting eyewitness descriptions of the robber.

McGarrett was charged with the Big John's robbery and a trial commenced. During the trial, McGarrett testified contrary to his statements to Officer Stafford, that he owned the vehicle and had purchased it from Surrell's brother-in-law. He also denied consenting to the search at the Outer Limits. The jury returned a guilty verdict for first-degree robbery, commission of a felony with a firearm, and two counts of aggravated assault. On April 12, 1994, McGarrett was sentenced to twenty-five years on the robbery conviction, fifteen years for commission of a felony with a firearm, and fifteen years on each of the aggravated assault charges, to run concurrently with each other. McGarrett appeals his convictions.

## DECISION

### I. Motion To Suppress Evidence From Automobile.

■ The standard of review on a motion to suppress is whether or not the trial court abused its discretion. *State v. Almond,* 511 N.W.2d 572, 574 (S.D.1994); *State v. Johnson,* 509 N.W.2d 681, 683 (S.D.1993). When consent to search is at issue, a question of fact, the trial court's findings will be affirmed unless they are clearly erroneous. *Almond,* 511 N.W.2d at 573; *Johnson,* 509 N.W.2d at 683. We must determine whether the trial court's findings are against the weight of the evidence. *Id.*

■ The Fourth Amendment to the United States Constitution and Article VI, § 11, of the South Dakota Constitution generally require a warrant based on probable cause in order to search a person or place. *State v. Zachodni,* 466 N.W.2d 624, 627 (S.D.1991). However, certain exceptions exist. For example, once a person consents to a search, probable cause is no longer necessary. *Id.* at 628. State has the burden to establish by clear and convincing evidence that "the search was the result of free, intelligent, unequivocal and specific consent without any duress or coercion, actual or implied." *Almond,* 511 N.W.2d at 576.

■ Stafford testified at the suppression hearing that he first observed McGarrett while McGarrett was sitting in his vehicle with the door open. Investigating the vandalism, Stafford approached the vehicle, shined his flashlight into the passenger compartment and noticed a pipe covered with glass particles. Stafford then asked McGarrett to consent to a search of the car. Stafford testified that McGarrett gave consent, telling him to "go ahead" because the car was not his.

Contrary to Stafford's testimony, McGarrett testified that he at no time consented to a search of the car. He acknowledges the police asked for his consent twice, but said he declined both times. McGarrett further argues the police made no effort to obtain consent from Surrell or discover the identity of the true owner of the car. Consequently, he concludes the .22–caliber pistol should be suppressed. We disagree.

This court in *Zachodni,* 466 N.W.2d at 628, stated that a search may be valid when police erroneously but " 'reasonably . . . believe that the person who has consented' " to the search possesses authority to do so. *Id.* (quoting *Illinois v. Rodriguez,* 497 U.S. 177, 186, 110 S.Ct. 2793, 2800, 111 L.Ed.2d 148, 160 (1990)). Courts in other jurisdictions have likewise held that drivers of vehicles can validly authorize searches. *Pupo v. State,* 187 Ga.App. 765, 371 S.E.2d 219, 222 (1988); *People v. Harris,* 199 Ill.App.3d 1008, 146 Ill.Dec. 90, 93, 557 N.E.2d 1277, 1280 (1990). In *Harris,* the court stated:

> A driver of a car has the authority to consent to a search of that car because he is the person having immediate possession and control of the vehicle. (Citations omitted.) As the driver, he has joint access and control over the entire vehicle[.] 3 W.LaFave, Search & Seizure § 8.6(a), at 316 (2d ed. 1987) (citations omitted.) A nonowning driver, of course, is limited in his authority to those parts over which he has been given access, and not over other parts which he has been restricted from accessing.

*Harris,* 146 Ill.Dec. at 93, 557 N.E.2d at 1280. McGarrett had exclusive control over and was the sole occupant of the vehicle when it was sitting in the bar parking lot.

We have stated the finder of fact is the exclusive judge of the credibility of witnesses. *State v. Krebs,* 504 N.W.2d 580, 585 (S.D.1993) (citing *State v. Lingwall,* 398 N.W.2d 745, 747 (S.D.1986)). Here, the trial court had an opportunity to hear testimony and make an evidentiary ruling based on that testimony. It is obvious that the trial court found Officer Stafford's testimony more credible in his claim that McGarrett consented to a search of the car at the Outer Limits than

McGarrett's denial of the same. Therefore, we cannot say the trial court abused its discretion in denying McGarrett's motion to suppress.

■ McGarrett further claims the second search of the vehicle at the impound lot was illegal, which he claims should result in the exclusion of the red sweatshirt and green sweatpants as evidence against him. The trial court rejected this argument and found that Surrell consented to that search. The facts support this finding and indicate that, after McGarrett told the police the vehicle belonged to Surrell, Detective Evans contacted Surrell at the motel. Surrell responded that he was indeed the owner of the vehicle and produced a bill of sale to verify his claim. He consented to the search, which lifted both warrant and probable cause requirements. *Almond,* 511 N.W.2d at 575; *Zachodni,* 466 N.W.2d at 628. We do not find the trial court abused its discretion in admitting this evidence.

## II. McGarrett's Proposed Jury Instructions.

McGarrett argues the trial court erred in denying that lesser included instructions be read to the jury. He offered lesser included instructions for grand theft, aggravated assault, and simple assault as alternative instructions to first-degree robbery. However, before a lesser included offense instruction is given, two tests—one legal, the other factual—must be satisfied. *State v. Tammi,* 520 N.W.2d 619, 620–21 (S.D.1994); *State v. Latham,* 519 N.W.2d 68, 72 (S.D.1994) (citations omitted). The requirements of the legal test mandate:

(1) All of the elements of the included offense are lesser in number than the elements of the greater offense;

(2) The penalty for the lesser included offense must be less than that of the greater offense; and

(3) Both offenses must contain common elements so that the greater offense cannot be committed without also committing the lesser offense.

*Tammi,* 520 N.W.2d at 621 (citing *State v. Wall,* 481 N.W.2d 259, 264 (S.D.1992)). The

legal test also requires that the essential elements of the lesser offense must be incorporated into the corpus delicti of the greater offense. *Id.* (citing *State v. Black,* 506 N.W.2d 738 (S.D.1993)). We have held that when the legal test is not satisfied, it is not necessary to consider the factual test before denying the lesser included instruction. *Id.*

McGarrett was charged and convicted for robbery under SDCL 22–30–1, which is defined in relevant part as "the intentional taking of personal property ... in the possession of another from his person or immediate presence, and against his will, accomplished by means of force or fear[.]"

McGarrett submitted numerous alternative lesser-included instructions to robbery for jury consideration. One of his proposals was an instruction for grand theft, which provided that "the defendant took money from the possession of another with the value in excess of $500, with the intent to deprive it from its owner." *See* SDCL 22–30A–17. McGarrett also proposed that aggravated assault be instructed upon as an alternative to robbery. The language of aggravated assault criminalizes "attempting to put the person in fear of imminent serious bodily harm, whether or not the defendant had the actual ability to do so." *See* SDCL 22–18–1(4). Finally, McGarrett's instruction for simple assault under SDCL 22–18–1(1) provided that "the defendant ... attempted to cause bodily injury to [the victims] and ... had the actual ability to cause the injury." *See* SDCL 22–18–1(1).

■ The trial court denied McGarrett's proposals, finding that they did not pass the tests for lesser included offenses of first-degree robbery. We agree. First, grand theft requires the stolen property be in excess of $500. In contrast, robbery can be committed without complying with that dollar amount. The legal test was not satisfied. Furthermore, both simple and aggravated assault require "an attempt or causation of

bodily injury." However, neither of these elements are necessary for first-degree robbery. *State v. No Heart,* 353 N.W.2d 43, 46 (S.D.1984). Consequently, the third prong of the legal test for lesser included offenses was not met for either of these lesser included proposals. The trial court did not err in denying these instructions.

■ McGarrett further argues the trial court erred in denying his lesser included instruction for carrying a concealed pistol without a permit (SDCL 22–14–9). As previously indicated, every element of the lesser included offense must be contained within the greater offense charged. The trial court gave an appropriate instruction setting forth the elements of SDCL 22–14–12.* McGarrett did not object to this instruction. A necessary element of SDCL 22–14–9 is that the concealed weapon must be carried "without a permit as provided in chapter 23–7," which is not an element of the offense charged under SDCL 22–14–12. Therefore, it is obvious McGarrett's proposed lesser included instruction did not comply with the legal test, and was properly rejected by the trial court.

■ McGarrett also advocated a lesser included instruction be given for simple assault (SDCL 22–18–1(1)) in conjunction with his charge for aggravated assault (SDCL 22–18–1.1(5)). Again, simple assault fails the legal test for a lesser included offense of aggravated assault. *Latham,* 519 N.W.2d at 72; *State v. Marshall,* 495 N.W.2d 87, 88 (S.D.1993). Simple assault under SDCL 22–18–1(1) requires proof of three elements: (1) the defendant must attempt to cause bodily injury to the victim, (2) other than a law enforcement officer engaged in the performance of his duties, and (3) has the ability to cause the injury. *Marshall,* 495 N.W.2d at 88. In contrast, aggravated assault (SDCL 22–18–1.1(5)) requires the proof of two elements, namely: (1) attempts to put another in fear of imminent serious bodily

---

* The trial court set forth the elements of the crime of commission of a felony while armed with a firearm, SDCL 22–14–12, by the use of the following pattern jury instruction:

The elements of the crime of commission of a felony while armed with a firearm as charged in the Information, each of which the State must prove beyond a reasonable doubt, are:
  1. That the Defendant committed Or attempted to commit a felony.
  2. That he did so while armed with a firearm.

harm, (2) by means of physical menace with a deadly weapon. *Latham,* 519 N.W.2d at 72. Since the elements of simple assault are greater than aggravated assault, prong one of the legal test is not met. *Id.* (citing *State v. Tapio,* 459 N.W.2d 406, 408 (S.D.1990); *State v. Gillespie,* 445 N.W.2d 661 (S.D.1989); *State v. Scholten,* 445 N.W.2d 30 (S.D.1989)). The trial court did not abuse its discretion in denying this lesser included instruction.

■ Finally, McGarrett argues the trial court erred by refusing his proposed instruction regarding State's failure to call Surrell as a witness. This instruction required the jury to infer that, due to Surrell's absence, any testimony would have been unfavorable to the State. The language read:

If it is peculiarly within the power of either the government or the defense to produce a witness who could give relevant testimony on an issue in the case, failure to call that witness may give rise to an inference that this testimony would have been unfavorable to that party. No such conclusion should be drawn by you, however, with regard to a witness who is equally available to both parties or where the testimony of that witness would be merely cumulative.

The jury must always bear in mind that the law never imposes upon a defendant in a criminal case the burden or the duty of calling any witnesses or producing any evidence.

McGarrett cites *United States v. Anders,* 602 F.2d 823, 825 (8th Cir, 1979), as authority for his proposition.

Nevertheless, the defense failed to show any evidence that State possessed the sole power to produce Surrell to testify or that he was under its control. *People v. Bustos,* 725 P.2d 1174, 1176 (Colo.1986); *State v. Anderson,* 867 S.W.2d 571, 576 (Mo.App. W.D.1993); *Anders,* 602 F.2d at 825.

The court, in *Anderson,* stated: "If a witness is equally available to both parties or unavailable to either party, the trial court should not permit counsel to argue to the jury ... that an adverse inference arises from the state's failure to call the witness." *Id.* at 576. McGarrett could have subpoe-

naed Surrell to testify, but failed to do so. *See State v. Sprik,* 520 N.W.2d 595, 602 (S.D.1994); *State v. Foell,* 416 N.W.2d 45, 46 (S.D.1987). Hence, the trial court did not err in refusing McGarrett's instruction.

Upon consideration of the other four issues raised by McGarrett, we conclude that no further meritorious claims exist based on settled law in South Dakota. Therefore, we decline to address them and affirm the jury's verdict in all respects.

We affirm.

MILLER, C.J., and SABERS and KONENKAMP, JJ., concur.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted, did not participate.